Haynes v. Hayward.

NATHANIEL HAYNES *versus* JOHN T. HAYWARD & *al.*

An agreement of parties that a deposition may be used by either side in the trial of a cause, and not in terms limited to the trial at a particular term of the Court, will not be construed by the Court to be so limited.

The deposition in such case is properly admissible at a subsequent trial; especially when it does not appear that the party objecting is taken by surprise, or that he asks for a continuance, in consequence of the ruling of the presiding Judge to admit it.

A. contracted with B. to sell him all the logs cut and hauled during a lumbering season into a certain stream by A's agents, at a stipulated price for the different kinds of lumber, per thousand, based upon the woods' scale of G., whose certificate of quantity was to be conclusive between the parties; with a further provision in the same contract, that B. was to pay A. fifty cents a thousand for driving the same logs to a point named; — *Held*, that A. sold the logs where they were landed, and that they then became the property of B.; that the agreement to drive was an independent branch of the contract, and that A. could not recover for the driving without proof of the driving; but that he could recover for the value of the logs if not driven to the point named. — *Held* also, that the scale bill of G., annexed to his deposition and verified by his oath, was admissible evidence to show the quantity of lumber.

ON REPORT from *Nisi Prius*, CUTTING, J., presiding.

This was an action of ASSUMPSIT on the following contracts:

"Bangor, March 26, 1853.

"Memorandum of agreement between Nathaniel Haynes and Hayward & Co., of Bangor: —

"Said Haynes agrees to sell, and does hereby sell to said Hayward & Co., all the logs cut and hauled into the "Joe Merry" waters the present lumbering season by J. & F. H. Cowan, and marked NHx.

"Said Haynes further agrees to drive said logs to the North Twin Dam on the west branch of the Penobscot river, for fifty cents per thousand feet.

"Said Hayward & Co. on their part agree to purchase said logs and to pay for the same at prices as follows: —

"For all White pine and for thirty thousand feet of Norway pine eight five-eighths dollars per thousand; for all Norway pine over thirty thousand feet, seven five-eighths dollars per M. feet; for spruce $4,50, per M.; and in addition thereto they are to pay said Haynes fifty cents per M. for driving

the said logs to said North Twin Dam so soon as they shall be there delivered.

"The foregoing sale and prices are based upon the woods' scale of John K. Gilmore, whose certificate of quantity shall be conclusive between the parties.

"The foregoing sale of logs shall be considered equal to cash when the logs get into the Penobscot boom, and shall be settled for as follows:—

"Said Hayward & Co., agree to negotiate the note of said Haynes on three or four months, for one thousand dollars, to furnish funds to pay his men when they leave the woods.

"They also agree to provide said Haynes with means, either in cash or short paper, to take up the aforesaid note of one thousand dollars, and also another note of said Haynes for the sum of eleven hundred dollars on four months from the first day of March, current, to the order of Ricker, Jewett & Co., at the time said notes mature, and the balance shall be paid one-half in three and one-half in four months from the first day of August next.

"It is further agreed with regard to said Gilmore's scale, that if on examination, it shall not be satisfactory to either said Haynes or Hayward & Co., then they shall agree upon some other scaler, whose certificate of quantity shall be conclusive between the parties, in which case the cost of re-scaling shall be paid by Hayward & Co."

Signed $\begin{cases} \text{" Nathl. Haynes,} \\ \text{" Hayward \& Co."} \end{cases}$

"Bangor, April 9, 1853.

"Have agreed with Mr. N. Haynes to discount from the prices before named 12½ cents per thousand, and the scale of Mr. Gilmore is to be taken in settlement."

Signed $\begin{cases} \text{" Nathl. Haynes,} \\ \text{" Hayward \& Co."} \end{cases}$

The writ was dated Sept. 22, 1854. Plea, the general issue. The plaintiff offered the deposition of one Gilmore, which was objected to as having been taken in another action.

Plaintiff's attorney then testified, that said deposition was

taken to be used in an action between the parties, returnable at the October term, 1854, which action was not entered. Another writ for the same cause was sued out, returnable to the January term, 1855. Subsequent to said October term, and before said January term, one of the defendants came to said attorney and said he had agreed with the plaintiff, that Gilmore's deposition might be used by either party, as had been before agreed between them in reference to said Oct. term; that he, defendant, considered said deposition favorable to him, and wished to have an agreement in writing; such an agreement was written, he thought defendant took it, it was not in witness' possession, nor had he seen it since it was written. It was signed by witness, as attorney for plaintiff, and by one of the defendants for them. Defendants denied, that there was any other scale bill than that in the deposition.

This action was tried at January term, 1856, and the deposition was then offered and objected to. But defendants afterwards waived their objections, and the deposition was used at that trial.

Annexed to said deposition was a paper, which plaintiff contended was the scale bill of said Gilmore. Defendants objected to the admission of the scale bill, that it was not the original, and offered to show by one Ruer, clerk of defendants, that the original scale bill was in defendants' hands on the same sheet with a letter to plaintiff from Gilmore, and making $5\frac{1}{2}$ per cent. discount in the price, which original was passed back to plaintiff. But the Judge admitted the scale bill.

Plaintiff introduced testimony tending to show, that he was engaged by his agents, in the winter of 1852–3, in lumbering on letter A., belonging to him, and in getting the logs into the "Joe Merry" waters, which logs were marked NHx. and that Gilmore was there scaling; also that the logs were well marked.

There was no positive evidence, that the logs were driven

to the "North Twin Dam," or nearer than within about seven miles of it.

The Judge ruled—on motion by defendants for nonsuit, on the ground that plaintiff had not sufficiently proved the driving to "North Twin Dam"—that plaintiff sold the logs by the contract where they were landed; that the logs then became the property of defendants; that the agreement to drive to "North Twin Dam," was an independent branch of the contract; that plaintiff could not recover for driving, but could recover the value of the logs if not driven to "North Twin Dam," or to the main Penobscot river.

The defendants offered to prove fraud or mistake in the scale, by evidence tending to show that there was a clean drive of logs to the boom, and that there was no loss of logs by freshets or their going to sea; that there were rafted at the boom, in 1853, 74,320 M., in 1854, 258,930 M., and in 1855, 152,366 M. at boom scale, which is about 20 per cent. larger than woods' scale; that great pains had been taken at all the booms and mills, and places where logs were secured below the main boom, in the river, in all the years 1853, 4, and 5, to secure all that escaped of this mark, without being rafted, and that 63,015 M. only had been recovered in the three years.   Other testimony of like kind was also offered. They also offered to prove that fraud was practiced by the Messrs. Cowan, and their men by their orders, in the scale; that logs were so sawed and laid as to conceal the rots and other imperfections; that the logs were not all actually scaled, but a few only at a time, and estimates made of the others by comparison.

The Judge excluded the testimony so offered by defendants.

In case the rulings were sustained, a default was to be entered, and the presiding Judge was to assess damages; otherwise a new trial was to be had.

*A. Sanborn* and *Haynes*, for plaintiff.

1. The deposition of Gilmore was properly admitted, on the agreement of Hayward, one of the defendants.

2. The scale bill was properly admitted as a part of the

deposition. Gilmore deposed that it was his scale bill. We refer to the language of the contract, "Gilmore's certificate of quantity," &c.

3. The testimony of the plaintiff's witness proves that the logs were duly marked with the contract mark.

4. The rulings of the Court, "that plaintiff sold the logs where they were landed; that the logs then became the property of defendants; that the agreement to drive to "North Twin Dam" was an independent branch of the contract; that plaintiffs could not recover for driving without proof of driving, but could recover the value of the logs, though not driven to North Twin Dam," were correct.

By the express terms and stipulations of the contract, it is evident that the plaintiff sold the logs to defendants, at the landing, and that they were thereafter at defendants' risk. The price of the logs at the landing, was agreed upon in one part of the contract, and in an independent part of it was the agreed price for driving them.

5. The testimony to prove fraud or mistake in the scale, was incompetent, because the parties had agreed that the scale of Gilmore should be conclusive; and this, as it appears, after they knew what that scale was.

There was a consideration, too, for that agreement, viz.; a deduction of $12\frac{1}{2}$ per cent. on a thousand.

Besides, if there was such fraud or mistake, it is not pretended that the plaintiff had any knowledge of it.

The only effect of such fraudulent conduct on the part of the Cowans or their men, was to produce mistake or error by Gilmore in his estimate or scale of the logs, and this contradicts his scale.

The same remark is to be made with regard to the testimony going to show that there was a clear run of logs to the boom, none lost, &c.

6. The other testimony offered by defendants is open to the objection first made, and much of it is entirely immaterial. Some of it is subject to other, and obvious objections.

*Blake*, for defendants.

1. The deposition of Gilmore should have been excluded. It was not taken in this action, but before the date of the writ in this action. It was offered at a former trial, and ruled out; but the defendants at length waived their objection for that term, and let it in. The plaintiff should have taken it again in vacation; he had notice it would be objected to.

2. The paper purporting to be Gilmore's scale should not have been admitted, without proof of loss of the original, or that this was a transcript from his scale book.

The report states carelessly, that the Judge admitted it as a part of the deposition. If inadmissible of itself, it could not be correctly introduced by annexing it to the deposition.

It is to be assumed that there was an original scale bill, and that this differs from that $5\frac{1}{2}$ per cent., and that the original is in the hands of plaintiff; for the defendants offered so to prove.

3. The contract to *sell* logs and to *drive* them was *one* contract, separately stated merely to fix the price when delivered at the boom. If so, a nonsuit should have been ordered, as requested.

4. The object of the proof offered by defendants, was to show that the logs, though Gilmore may have intended to scale them honestly, were not marked, (which would be the fault of the plaintiff who contracted to sell them so marked,) or that, if so marked, there was fraud practiced by the Cowans, the plaintiff's agents, upon the scaler, so that there was an over-scale.

5. In regard to *marking*; the plaintiff contracted to sell logs marked NHx, and if the scale included logs not marked, so many as were not marked, though included in the scale, defendants ought not to pay for. The duty of plaintiff was to have all the logs marked. The testimony offered and excluded, tended to show that a large number of the logs scaled, were not marked.

6. We offered to show fraud in the Cowans, plaintiff's agents, or of their men by their order, on the scaler. This

testimony should have been admitted, whether the plaintiff was connusant of the fraud, or not. He ought to suffer, and not the defendants, by the wrongful conduct of his agents.

7. Suppose Gilmore made an important mistake in his scale; suppose he made a mistake in adding up his figures; cannot that be shown? And must the defendants suffer by this means, and have no remedy?

GOODENOW, J.—This action was tried at the January term, 1856, and the deposition of John K. Gilmore was then offered by the plaintiff, and objected to by the defendants. The defendants afterwards waived their objections, and the deposition was used at the trial. At this term, April, 1856, the plaintiff offered the same deposition, which was again objected to by the defendants, as having been taken to be used in another action. The plaintiff's attorney, H. P. Haynes, Esq., then testified that said deposition was taken to be used in an action between these parties returnable at the October term of the S. J. Court, 1854, which action was not entered. Another action, for the same cause, was commenced for January term, 1855. Subsequently to said October term, and before said January term, said Hayward came to him, and said he had agreed with the plaintiff Haynes, that Gilmore's deposition might be used by either party, as had been before agreed between them in reference to said October term; that he considered the deposition favorable to him and wished to have the agreement in writing. Such an agreement was written. He thought Hayward took it; it was not in the witness' possession; that he had not seen it since it was written. It was signed by witness as attorney for plaintiff, and by Hayward for defendants.

As it appears from the report of the case, the defendants did not limit the waiver of their objections to the deposition, to the trial at the January term; we are of opinion that the deposition was properly admitted at the trial at the April term, 1856. It does not appear that the defendants were surprised by its admission, or that they moved for a continuance

in consequence of it. The scale bill annexed, verified by the oath of the defendant, taken in connection with the written contract between the parties, was also properly admitted.

We are of opinion that the Judge committed no error in refusing to order a nonsuit; or in rejecting the testimony of the defendants as to the facts, which the report states they offered to prove in defence.

The rulings of the presiding Judge are sustained. A default is to be entered and judgment for such damages as he shall award.

TENNEY, C. J., and HATHAWAY, APPLETON, and MAY, J. J., concurred.