RUSSELL HOTCHKISS & als. versus WILLIAM R. HUNT & al.

In a contract for the sale of goods, when the price, time and manner of payment, and time and manner of delivery, are agreed upon, delivery will, in the absence of all other facts, pass the title.

But when there is an express or implied agreement that the title is not to vest until payment or delivery of notes, a delivery will not pass the title, until the condition is performed.

When, by the terms of an agreement of sale, the article sold is to remain in the possession of the vendor, for a specific time, or for a specific purpose, as part of the consideration, and the sale is otherwise complete, the possession of the vendor will be considered the possession of the vendee, and the delivery will be sufficient to pass the title, even as against subsequent purchasers.

If one having possession of property of others for a specific purpose, sends it to third persons, who receive it and hold it as security for money advanced to the sender, such sending, receiving and holding is a conversion, both by him and them, and the owners may maintain trover without any demand.

Nor will it make any difference, that the persons receiving it acted ignorantly and in good faith.

A proposition made by the owners of property tortiously held by others, to acknowledge their title and hold it for them, is not a waiver of the conversion, unless assented to by both parties.

In trover for the conversion of property, *by receiving it as a pledge for money advanced to a bailee*, evidence in defence that he could not send it to the place to which he had agreed to send it for manufacture, and therefore sent it to the defendants, is immaterial and inadmissible.

The petition of the plaintiffs to a Court of Insolvency in Massachusetts, setting forth that they hold certain notes against an insolvent debtor, and that they are the owners of certain property, which they hold as collateral security for the payment of those notes, and praying for leave to sell the property and to apply the proceeds towards the payment of the notes, and that they may be admitted to prove the balance of their claims against the insolvent, and the order of court giving them leave as prayed for, together with evidence of a sale to the plaintiffs at auction, are not a bar to an action of trover for a conversion of the property by the defendants, before these proceedings took place, the plaintiffs not claiming title under them.

The title of a mortgagee is sufficient to maintain trover against all persons not setting up any claim under the right to redeem.

When property is held as security for the payment of certain notes, the title to it is not changed so long as any of the notes remain unpaid.

Manufacturers cannot lawfully set up a lien for labor performed upon articles tortiously converted to their own use.

ON EXCEPTIONS to the ruling of MAY, J.

TROVER for 600 Para hides.

The plaintiffs introduced evidence tending to show that they were originally the owners of the hides sued for; that they had some negotiations with Edward A. Frye for a sale of them to him; that, after some transactions which the defendants claimed passed the title in the hides to Frye, the following agreement was executed by Frye to the plaintiffs, viz. : — "Boston, 8th October, 1857. It is hereby agreed and set forth that whereas Edward A. Frye has given his promissory notes to Hotchkiss Bros. & Co., for the following amounts, as follows, viz. : —

| | | |
|---|---|---|
| One note dated ——, | at 2 mos. for | $1514,69 |
| One do. " ——, | at 3 " " | 1530,80 |
| One do. " ——, | at 3 " " | 1546,92 |

Amounting to forty-five hundred and ninety-two 41-100 dollars, he, the said Edward A. Frye, agreeing to pay said notes at the maturity of the same, and the said Hotchkiss Bros. & Co. on said payment being duly made, within or at the said maturity, shall sell and convey to the said Edward A. Frye nine hundred and twenty wadded or green salted Para hides, said hides weighing 33,840 lbs. which said Frye has received from said Hotchkiss Bros. & Co., the ownership of said hides to be vested in the said Hotchkiss Bros. & Co. until said hides are tanned, at the cost and risk of said Frye; if such payment shall not be made as aforesaid, said Hotchkiss Bros. & Co. shall be authorized to take and dispose of said hides, or leather, in the way they judge best and apply the net proceeds to payment of said notes. Said hides are to be sent to Orford tannery, Grafton county, New Hampshire, except 273 cases which will be sent to a tannery not yet decided on. Signed, Edward A. Frye. Witness, S. Brown, of 23 Ferry St., N. Y., Broker"; —that Frye, without the knowledge or consent of the plaintiffs, forwarded the hides sued for to the defendants, requesting them to sign and return their notes to him for specified amounts; and that they did as requested; and that, before the com-

mencement of this suit, their agent called on the defendants in respect to the hides, and they declined saying or doing any thing about them.

The defendants testified that they were in the habit of receiving hides from Frye to tan, and of advancing their notes upon them, and that there was an agreement between them and him, that they should hold the hides as security for such advances; that they received these hides believing them to be the property of Frye, and advanced him their notes amounting to $4000, upon them; that plaintiffs' agent called on them and asked them if they would agree to tan the hides for the plaintiffs, but they declined to do so.

One of the defendants testified that they now denied, and always had, that the plaintiffs had any interest in or right to those hides. The defendants proposed to show that the Orford tannery, named in paper of Oct. 8th, was carried on by defendants' brother; that in the fall of 1857, the supply of bark entirely failed them, and the tannery was not in working condition, and that if the hides had longer remained in store they would have been so heated as to become nearly worthless.

To this inquiry the plaintiffs objected, and the Court, sustaining the objection, ruled the proposed testimony inadmissible.

There was evidence that the plaintiffs received a part of one of the notes described in the agreement, and accepted a new note for the balance, and also promised to assist him in meeting the other notes; but that the second and third notes had never been paid.

There was other evidence in relation to the original transactions between Frye and the plaintiffs, and certain proceedings before the court of insolvency in Suffolk county, Massachusetts, but it is sufficiently stated in the opinion.

The defendants requested certain instructions to the jury, which the presiding Judge declined to give any further than they were contained in the instructions already given.

The questions of law raised upon the instructions and the refusals to instruct, are stated in the opinion.

The verdict was for the plaintiffs. The jury also returned a special verdict, which became immaterial in the view of the case taken by the Court.

The defendants excepted to the exclusion of testimony, to the instructions and refusals to instruct.

*Edward Avery*, of Massachusetts, for defendants.

I. The evidence in relation to the Orford Tannery was admissible, as tending to show that Frye exercised proper care over the hides, and as rebutting any evidence of conversion by Frye or the defendants. 2 Greenl. Ev., § 643.

II. A continuous holding of the goods by Frye was not a sufficient delivery to the plaintiffs to revest a title to the hides in them, under the contract of October 8. Chitty on Contracts, pages 741 to 743, and notes to page 742; *Quincy* v. *Tilton*, 5 Maine, 277; *Gleason* v. *Drew*, 9 Maine, 81, 82; *Chapman* v. *Searle*, 3 Pick., 38.

The legal effect of this contract is to be determined in connection with all the facts relating to the giving of it; the relation of the parties to the subject matter of the same; and the other evidence relating to the acts of the plaintiffs under or in relation to it.

It contemplates a change in the condition of the hides by persons other than Frye; it authorizes Frye to part with the possession of them, and to add to their value by the expenditure of his own funds; it makes Frye responsible for all costs and risks incident to their tanning and possession; upon the most favorable construction for the plaintiffs, it continues the ownership in them only until they are tanned; in case of non-payment by Frye, it only authorizes the plaintiffs to sell, &c., not for themselves, but for account of Frye and for his benefit.

By its terms it is fairly to be inferred that Frye was to have possession of the hides until the maturity or *payment* of all the notes.

The place designated at which the hides were to be tanned is not of the essence of the contract.

III. The proceedings in insolvency were a judgment *in rem*, sought by the plaintiffs, of a court of competent jurisdiction, and determined, —

1. That the plaintiffs owned the notes described in the petition, and were, to the amount of those notes, creditors of Frye.

2. That the plaintiffs held, by virue of the contract of October 8, 1857, the hides claimed of the defendants as collateral security for the payment of said notes.

This judgment is conclusive upon the plaintiffs. Laws of Mass., 1838, c. 163, § 3; 1 Greenl. Ev., §§ 525, 541, 543, 533, 534; Story's Conflict of Laws, §§ 591, 592, 593; *Anderson* v. *Frye*, 6 Ind., 76. *Smith* v. *Smith*, 17 Ill., 482; 2 Smith's Leading Cases, p. 431.

The petition and order are in the nature of judicial admissions, and should have been submitted to the jury as such, with proper instructions as to their effect. 1 Greenl. Ev., §§ 27, 186, 210, 527, *a*.

The exercise of ownership over, and the attempt to enforce the notes after a breach of the contract by Frye, amounts to an admission of the existence of the contract of sale, which precludes the plaintiffs from afterward treating it as void. They are presumed to have waived the breach and rely on the contract itself. *Hill* v. *Green*, 4 Pick., 114; *Walker* v. *Davis*, 1 Gray, 508; *Brinley* v. *Tibbets*, 7 Maine, 75.

IV. The defendants, having received the hides in good faith, are not guilty of a conversion. 2 Greenl. Ev., § 642; *Baker* v. *Middlebrouk*, 24 Conn., 207; *Strickland* v. *Barrett*, 20 Pick., 415.

V. If, by any act, the plaintiffs assented to or affirmed the defendants' possession, such assent or affirmation purged any previous tortious conversion. *Hewes* v. *Parkman*, 20 Pick., 90; *Bell* v. *Cummings*, 3 Sneed, 275; *Rotch* v. *Hawes*, 12 Pick., 136; *Brewer* v. *Sparrow*, 7 B. & C., 310; 1 Hilliard's Torts, 47.

VI. The defendants had a lien upon the hides and were

entitled to retain possession of them.  *Taggard* v. *Buck-more*, 42 Maine, 77 ; *Ames* v. *Palmer*, 42 Maine, 197.

VII.  The receipt of money on the first note named in contract of October 8, 1857, and the acceptance of the note sent by Frye to the plaintiffs for $1200 advanced by them, and the agreement to aid and assist him in payment of the other notes, was a waiver of the terms of the contract. *Hayden* v. *Madison*, 7 Maine, 76 ; 13 Ill., 610.

*Ware*, of Massachusetts, and *Williamson*, for plaintiffs.

The opinion of the Court was drawn up by

KENT, J. — The facts upon which the questions in this case arise, when carefully examined, are few and simple, although the report is somewhat voluminous.

The plaintiffs were the undisputed owners of six hundred *Para hides*.  They negotiated for a sale of them to Edward A. Frye, and, after various propositions and a long correspondence, they finally agreed to sell them to Frye at a certain price, and receive his notes on time, in payment.  Frye assented to the purchase, having made the final proposition as to time of payments of the notes.  The hides were at New Haven, where, after the agreement for sale and payment had been made, they were weighed off, and Frye took them into his possession and caused a part of them to be transported to his store in Boston, and left the remainder on a wharf in New Haven, he paying wharfage therefor.

On the day after the weighing, the plaintiff sent to Frye a bill of the hides, and a minute of the time, &c., of the notes to be given, and requesting him to send the notes at once. The notes were not sent, but, six days afterwards, Frye asks for a change of times of payments of the notes.  The plaintiffs reply, that they will consult on the subject.  The notes were never sent according to the original agreement, but about ten days after the weighing of the hides, on the 8th of October, a new agreement in writing was made, between the parties, by which, as is contended by the plaintiffs, the original bargain was substantially rescinded, and the title, if

it ever passed out of them, was reinvested in them. After the contract of the 8th of October, Frye, without the knowledge or assent of the plaintiffs, sent a part of the hides, (the 600 now in question) to the defendants to be tanned. The defendants advanced their notes to Frye, holding, and claiming to hold, the hides as security for such advances, according to an agreement between the parties. This action of trover is brought to recover from the defendants the value of the six hundred hides.

The first question is — was the property of the hides in the plaintiffs at the time of the alleged conversion? The defendants contend that, by the sale and delivery under the first agreement, and the facts connected therewith, the property passed absolutely to Frye, and that the title thus acquired has never been divested.

They say that the contract of the 8th of October was not a resale, or, if it was, that the title was not perfected under such agreement of resale, because there was no delivery, and no consideration. The plaintiffs contend that the delivery under the first contract was conditional and depended upon the payment of the price by the notes. That on the failure to send the notes, the title, which would otherwise have been perfected, did not pass, and that the subsequent agreement takes effect as a new contract, or as an essential modification, if not entire rescission of the first agreement. It is undoubtedly true, that when the elements of a sale, price, time and terms of payment, and the manner and time of delivery are agreed upon, delivery will, in the absence of all other facts, pass the title. But where there is an express or implied agreement, or understanding that the title is not to vest until payment or delivery of the notes agreed upon, a delivery will not pass the title until the condition is performed, and the vendor, in such a case, may reclaim the property, even from one who has purchased in good faith, and without notice from the vendee. *Coggill* v. *H. & N. Haven Railroad Co.*, 3 Gray, 545.

It would seem that it is a question of fact for the jury,

whether there was such expressed or implied agreement entering into and making part of the contract of sale.

But we do not think it necessary to discuss this point more fully, as there is another point made by the plaintiffs, which, if sustained, disposes of this part of the case. The plaintiffs. say, that, admitting that the title did pass to Frye by the weighing off and possession taken by him, yet, by the contract of the 8th of October, made before any right of a third party had intervened, the old contract was rescinded and a new one made, by which the title was revested in the plaintiffs, and Frye afterwards held the hides as their property, according to its terms.

On this point the Judge instructed the jury, that, *if* the title did pass to Frye by delivery under the first contract, the parties might, by mutual agreement, rescind the former contract, and make a new one different from the first, and, if they did so, that the legal effect of the new contract in writing was a rescission or modification of the original contract, and revested the title in the hides in the plaintiffs, as between the parties, no rights of a third party having intervened, *without any further or other delivery* than arises from the fact that Frye, by the new contract, was, to hold and retain the hides for the plaintiffs, and a possession by Frye, as their agent, would be, legally, sufficient to revest the title in the plaintiffs as against subsequent purchasers and persons unlawfully intermeddling with their rights. Is this ruling erroneous? There can be no doubt that the parties might rescind or annul the first agreement, or that Frye might resell or reconvey the hides to the plaintiffs if he had acquired a legal title thereto. The agreement to release Frye from his obligation, connected with the new agreement to tan, are a sufficient consideration.

The written contract of October 8th is signed by Frye alone, and in it he distinctly says, "the ownership of said hides to be vested in the said Hotchkiss Bros. & Co. until said hides are tanned, at the cost and risk of said Frye." This language not only recognizes the title but may fairly

be said to convey it. The whole instrument shows that, under this new agreement, the parties intended that the former sale and delivery were to be annulled, and that, instead of an absolute sale, the plaintiffs were to resume their former ownership, if they had parted with it, and to retain the title until the hides were tanned and the notes were paid. It is insisted, however, that if the title actually passed under the first sale, that a resale can be effected only in the same manner as the original sale, and that, unless a delivery is proved, the title will not revest. This proposition, as a general rule, seems to be well established. But where, by the terms of the agreement, or by a fair implication therefrom, the article thus sold or resold is to remain in the possession of the vendor for a specific time or for a specific purpose, as part of the consideration, and the sale is otherwise complete, the possession of the vendor will be considered the possession of the vendee, and the delivery will be complete and sufficient.

In the case of *Barrett* v. *Goddard*, 3 Mason, 114, it appeared that certain bales of cotton were sold by marks and numbers, then lying in vendor's warehouse, for which a note was given on six months, and it was agreed that they might remain rent free, at option of vendee, in vendor's warehouse; and, although there was no separation or formal delivery in any manner, it was held that the delivery was complete as against a subsequently attaching creditor, whose title was by assignment. Judge STORY says :— " The principle is sound, that a continuance of the possession of the vendor does not prevent the delivery being complete, if nothing further remains to be done on either side, and the possession is by mutual consent. There is nothing in reason or principle to make the present case different, simply because the bales of cotton remained in the plaintiff's warehouse. *It was part of the bargain* that they should so remain, and a part of the consideration of the promise." This case is cited and part of the above language quoted by C. J. SHEPLEY, in *Means* v. *Williamson*, 37 Maine, 556.

The case of *Gleason* v. *Drew*, 9 Maine, 81, sustains the same view. That was a case of resale, and the point was urged that there was no delivery. The Court admit the general principle, that the same formalities were requisite in resale as in the original sale, but hold, that where, under the new agreement for a resale, one of the terms was that the vendor should retain the property as the vendee's, with a right to repurchase, that the property would be reinvested in the original owner without any other delivery.

The case of *Quincy* v. *Tilton*, 5 Maine, cited by the defendants, only enunciates the general principle, as above stated. It does not touch the case where, by the terms of the agreement, the vendor was to retain possession as agent, bailee, or conditional purchaser of the vendee.

The same rule is found in the civil law. Pothier says— "By the feigned delivery which results *from the clause authorizing the seller to retain the thing* as a usufructuary, hirer, lessee, or from the mere clause of constitution, the buyer truly takes possession of the thing, and thereby truly acquires the property of it. By these clauses the seller takes possession of the thing in name of the buyer." Pothier on Sale, (Cushing,) 203; *Holley* v. *Higgeford*, 8 Pick., 73.

We have seen the report and opinion in the case of *Beecher* v. *Mayall*, decided by the Supreme Court of Massachusetts, in 1860, and not yet published. It is very similar in its facts to the case before us. In that case certain steam boilers were sold by the plaintiff to a firm, who took possession; soon afterwards, at request of the firm, the first sale was cancelled by mutual consent, no part of the original purchase having been paid. It was then agreed, that the firm should repair the boilers for the plaintiff, for which work they were to be paid by certain other articles included in the original sale. The action was tort, to recover the value of the defendant, who claimed under the original sale and contended that the resale, if made, did not operate to revest the property in the plaintiff, *there being no redelivery*. The presiding Judge instructed the jury that, in case

of a resale there must be a delivery, actual or constructive, but, that slight evidence of delivery would be sufficient, and that the jury might presume it from subsequent acts of control and possession on part of the plaintiff, if proved. The Court, upon exceptions, decided that this instruction was wrong; that if there was a sale and a resale, or surrender of all the rights under the first sale, that any further evidence of delivery, to be shown by subsequent acts of the parties, was unnecessary; that if, upon the resale, it was stipulated that the vendors in the resale were to proceed to repair the articles, and were to have a possession for that purpose merely, their possession would be the possession of the plaintiff; that, although the Judge ruled that slight evidence of delivery would be sufficient, yet, as it assumed that *something* was necessary beyond the contract, to give up the sale and retransfer the property to the plaintiff and keep possession of the same to make repairs, in pursuance of the conditions of the resale, it was erroneous.

We are satisfied that the ruling of the Judge on this point was essentially correct, and that, after the contract of October 8th, the title of the hides was in the plaintiffs. That contract puts the title in the plaintiffs, and they agree to sell and convey the hides to defendants on the payment of the notes named at maturity. It is expressly provided that the ownership shall remain in plaintiffs, until the hides are tanned, and the leather is then to be taken and sold by the plaintiffs and the money applied to pay the notes.

This renders it unnecessary for us to consider the requests, objections and rulings which have reference to the question whether the first sale to Frye was perfected by the delivery. Assuming all that the defendants claim on this point, and rejecting the findings of the jury as immaterial, or even as incorrect, if there was a resale under which the title vested in plaintiffs, the first sale and the evidence admitted and rejected on that point, becomes immaterial. This applies to the evidence of a custom in New Haven to deliver goods before payment. This evidence only affected the question,

whether the title passed to Frye under the first sale, and therefore, in the view we take, is immaterial. This was the view taken by the presiding Judge. The same remark will apply to the requests and the rulings on all points connected with the first sale and the effect of the delivery under it.

On a careful examination of the rulings on the question of conversion, we find no error prejudicial to the defendants. The jury were instructed, in substance, that the possession of Frye, under the written contract, was lawful for all purposes contemplated by the contract; but that, if he sent the hides to defendants, and, by agreement with them, they took them as pledge or security for advances made to Frye, by them, that such sending and receiving, and holding, was a conversion, both by Frye and defendants, and no demand was necessary. It is not necessary, as seems to be assumed in the requests, that there should be a fraudulent intent proved. A claim of right, honestly made, does not justify intermeddling unlawfully with another's goods. A demand is necessary when there has been no actual assumption of ownership or right to control or dispose of the article unlawfully. Frye, when he undertook to dispose of the hides to obtain money or notes for his own use, was guilty of a wrongful conversion, and the defendants, when they took them for the purpose of securing such advances, were also guilty of a conversion, although acting in good faith and ignorantly. If the bailee of property for a special purpose, sells or pledges it without right, the purchaser does not thereby acquire a lawful title or possession, and the owner may maintain trover against him without demand. *Galvin* v. *Bacon*, 11 Maine, 28; *Parsons* v. *Webb*, 8 Maine, 38; *Stanley* v. *Gaylord*, 1 Cush., 536.

It is insisted that if there was a conversion it was waived by certain transactions, previous to the institution of this suit. The Judge ruled that a tortious conversion might be waived or assented to, so as to prevent the maintenance of the action. It was left to the jury to determine the fact on all the evidence. He ruled, as matter of law, that the offer

ŏr request in the paper produced, that the defendants should hold and tan the hides for the plaintiffs, would not of itself purge or waive the tort, nor would any efforts on their part, to have the defendants acknowledge their right and title, and hold and tan the hides for them, unless the defendants assented to do so, and, if they did not so assent, the plaintiffs might withdraw their request, and it would not be a waiver of a prior conversion.

It would hardly be contended that a mere proposition, by the true owner to a wrongdoer, who had taken the property unlawfully, that he should acknowledge his right, and thereafter hold the property as his bailee, to do work thereon, would divest the owner of his right of action, if the proposition was not accepted or acted upon. If a man should find his horse in a livery stable, claimed by the keeper as his, and the owner should propose to the stable man to acknowledge his title and right, and thereafter keep the horse at livery for him and at his expense, and the proposition should not be accepted, would any one contend that the owner was estopped from bringing an action of trover, on the ground of waiver of the prior conversion?

The fact of waiver was submitted to the jury, and the ruling on this point was correct.

The evidence offered in reference to the Orford tannery was properly excluded as immaterial. The plaintiffs do not complain that the hides were not sent to the Orford tannery named in the contract, and this change of the place of tanning is not the conversion relied upon. If it had been, the facts offered in evidence might have been material. But the facts relied upon to show a conversion have no connection with the place, and would have the same effect if the contract had named the defendants' tannery at Liberty as the place of tanning.

The fact that the hides could not be tanned at Orford, did not give, or tend to establish a right in Frye to dispose of the hides for his own purposes. It was not the *place* to

which he sent them, but the *purpose* for which he sent them, that constitutes the wrongful conversion.

.The defendants introduced in evidence a petition of the plaintiffs to the Judge of the Court of Insolvency, in Suffolk county, Massachusetts, wherein they set forth that they hold the notes named in the contract of October 8th, that they are owners of the hides in question, in process of tanning, which they hold as security for the payment of said notes, under the agreement of October 8th, a copy of which is annexed, and pray leave from the Judge to sell the hides and to apply the proceeds towards payment of the notes, and ·to be admitted as creditors of Frye for the balance. They also introduce the order of Court, which, without any other adjudication, gives leave to sell as prayed for. The assignee assents to a sale, on condition that the petitioners shall not become purchasers at a less sum than twelve hundred dollars ; also, the certificate of sale at auction, to the plaintiffs, for thirteen hundred dollars.

On these papers, the defendants requested the Court to instruct the jury, that the plaintiffs were *estopped* from setting up any other claim inconsistent with that set forth in the petition, and from claiming to be general owners. This was the only request for instructions on this point. · The Judge declined so to instruct, and did instruct that these proceedings were not a bar to this action.

The first fact to be noticed is, that all these proceedings in the Court of Insolvency were subsequent to the alleged conversion and to the date of the writ in this case. The claim is, that the recital or assertion in this subsequent petition, that the hides were held by the plaintiffs as owners and as security for the notes, operates as an *estoppel*, and defeats the title and right to further maintain an action for a prior conversion. If the defendants claimed any right or title under, or by virtue of the sale, made in pursuance of the license of the Judge, it might well be contended that the plaintiffs should not be allowed to question the title they acquired by virtue of a sale which they had asked for and caused to be

made. But no such claim is made. In fact, the plaintiffs themselves became the purchasers at that sale, thus adding to their former title whatever rights could accrue to them from such sale.

It is true, that a distinct judgment of a Court which has jurisdiction to determine absolutely the question of title, directly upon the point of title in the thing, will usually be conclusive upon the parties in the proceeding, and, in many cases, upon all the world. The decrees of forfeiture, and other decrees *in rem* in admiralty, may thus operate when the question of title is distinctly passed upon as a finality.

In this case, we have no evidence in the report, touching the nature and extent of the powers of the Massachusetts Court of Insolvency, or of the statute under which it existed. But, assuming that it had power to do and order what was done and ordered in this case, we fail to perceive in the record any adjudication or decree touching the title, or any thing beyond a license to sell. It may be likened to a license granted by a Court of Probate to an administrator, to sell real estate, upon his petition setting forth the title in the deceased. A sale by virtue of such license would not convey any title against a third party, who was the real owner of the land. The license to sell neither creates nor defeats a title. The Court simply authorizes a sale, makes no adjudication as to title, leaving the right of all, not connected with the estate, untouched. Nor would a recital in such petition, or in a suit at law, that the deceased held certain lands in mortgage, or as security, estop the administrator, or the heirs, from setting up a claim in fee to such lands, upon proof establishing the title against a party not connected with the proceedings. If we look at the recitals in the petition, we find nothing there inconsistent with a title in the plaintiffs. It distinctly alleges that the plaintiffs "are the owners" of the hides. The other parts of the petition may, perhaps, be said to represent this ownership as being that of mortgagees. But such a title might be good to sustain this action against the defendants, who do not set up

any claim under the right to redeem, or, if they did, might find that right of no avail against the mortgagees. There are no grounds to sustain the requested instruction, that these proceedings estop the plaintiffs from establishing, by proof, a legal title against these defendants, who are strangers to the proceedings in the Insolvency Court.

The receipt of a part of the first note and the acceptance of the note sent by Frye, and the agreement to aid him in meeting the other notes, was not a waiver of the terms of the contract such as to invalidate the title to the hides. If the first note had been fully paid or relinquished, the title would still be in the plaintiffs, so long as any one of the notes remained unpaid. A question of waiver was one of fact.

We have examined the several questions in the depositions which were objected to, and we do not discover any error in the rulings of the Judge in admitting or excluding them. It is unnecessary to specify the several objections.

The case, as presented, did not require any other rulings on the point of a lien for work, than those given. If the defendants had not been guilty of a wrongful conversion before and independent of any demand, according to the rule given by the Judge, then the action could not be maintained. If they had been thus guilty, then clearly they could not legally set up a lien for labor performed on the articles converted.

If the acts of the defendants were not a conversion, the defence was sufficient without a lien. If they were a conversion, no lien could exist.

It is unnecessary to consider the question whether, in any event, under all the contracts, a lien could be set up by the defendants against the plaintiffs.

    *Exceptions overruled.—Judgment on the verdict.*

TENNEY, C. J., RICE, APPLETON, CUTTING and MAY, JJ., concurred.