S. A. STONE & CO. v. DAVIS & MOORE.
(No. 5355.)

(Court of Civil Appeals of Texas. Austin. April 17, 1915.)

1. SALES ☞201—PRESUMPTION—TITLE.

A contract entered into in April, whereby plaintiff agreed to sell to defendant certain steers at a certain price per head, deliveries to be made between then and the 1st of July following, and whereby the buyer agreed to feed cotton seed cake each day until delivered, or not later than June 1, 1910, passed the title to the buyer, though they remained in possession of the seller for feeding and pasturing until the price was paid.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 529–541; Dec. Dig. ☞201.]

2. SALES ☞201—DELIVERY—CONDITIONS.

That the cattle were to be fed on cotton seed cake while they were to be held in the pasture was not a condition precedent to the passing of the title, but an independent condition or covenant, and the sale was complete without performance of such condition by the seller.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 529–541; Dec. Dig. ☞201.]

3. SALES ☞116—RESCISSION BY BUYER.

Where, notwithstanding the breach of the condition as to feeding for about two days, no substantial damage resulted to the buyer, he had no right to rescind.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 290; Dec. Dig. ☞116.]

Appeal from District Court, Travis County; Chas. A. Wilcox, Judge.

Action by S. A. Stone & Co. against Davis & Moore. Judgment for defendants, and plaintiff appeals. Affirmed.

On the 30th of April, 1910, the parties hereto entered into a written contract, whereby appellees agreed to sell and deliver to appellants 420 to 430 steers then located in the Richards and Caldwell pastures in Travis and Bastrop counties; Stone & Co. agreeing to pay therefor $52.50 per head for 400 head thereof and $40 per head for the remainder, deliveries to be made at any time between then and the 1st of July next thereafter. Appellees agreed to feed about 300 head of said steers four pounds of cracked (cotton seed) cake each per day until delivered, or not later than June 1, 1910. The sum of $4,250 was paid by appellants on said contract as earnest money, which was to be held until the last delivery, when it was to be taken into account and applied thereon; it being agreed and understood between the parties that said cattle were to be held in said pastures until delivered. About two weeks thereafter appellants shipped out and sold on the market 134 head of said 300 steers, for which they paid appellees the sum of $52.50 per head, making a profit thereon of $675.83. About the last of May appellants,

discovering that appellees had failed on two different days to feed the remaining 164 head the cracked cake, as required by said contract, made an effort to notify appellees thereof, and in a few days thereafter did notify them thereof, and refused to accept or receive any more of said cattle on the ground that appellees had breached said contract in this respect, declaring the contract at an end, and demanding to be placed in statu quo. In order to minimize the loss, if any, on said cattle on account of decline in the market or otherwise, said parties on the 10th of June made a second contract, whereby it was agreed, without prejudice to their respective contentions, that appellees should sell the balance of said cattle on the market not later than the 15th of July, for the best price obtainable, and, after paying the cost of said sale, should apply the remainder in liquidation of the amount claimed to be due them by appellants on said contract and pay the balance, if any, to appellants, which was accordingly done; and appellants thereafter brought this suit against appellees to rescind said contract and to recover the sum of $1,102.44, which would be the amount due them, if it be conceded that they were entitled to rescind, contending that the stipulation to feed said cattle constituted an essential part of said contract, without which it would not have been made, and by reason of the breach thereof said cattle failed to take on flesh, as they otherwise would have done, whereby appellants were damaged. Appellees, after a general and special demurrer, relied upon a general denial. A nonjury trial resulted in a judgment in favor of appellees, from which appellants have prosecuted this appeal.

The court filed its conclusions of fact and law, and found, among other things: That said 300 head of steers which appellees agreed to feed with cotton seed cake were kept in separate pastures from the others, and that said steers had been fed with cracked cake during the preceding winter and were in good condition at the date of the contract. That prior to its execution the parties thereto had inspected said cattle and examined the stock of cracked cake belonging to appellees, stored on the premises for the purpose of feeding said cattle, and the parties had estimated that the quantity of cake on hand would be sufficient to feed said steers the amount and for the period provided in the contract. That appellees fed said steers all of said cake which they had on hand at the execution of the contract, but that during the latter part of May, for at least two days, and possibly a few other days, they failed to feed said steers the cracked cake as specified in the contract. That appellees had placed in charge of said cattle persons who were experienced in handling and feeding cattle, instructing them to feed

said cattle each day, as provided in the contract, and had no knowledge of such failure to so feed them. That, immediately following the days upon which said cattle were not fed, they looked slightly drawn, but that during the month of May, and especially during the latter part thereof, the grass in said pastures was good, and the injury to said cattle by reason of the failure to feed same was small, and the effect thereof upon said cattle but temporary. Said cattle readily fattened upon the grass in said pasture. after the feeding had. ceased. That about the dates of the failure to feed said cattle, and of appellants' refusal to accept same, the market value of cattle had declined. That plaintiffs made no effort to account to defendants for the profits realized by them on the sale of the 136 head of cattle delivered about May 13, 1910, until the filing of their amended original petition, on September 18, 1913, which was something over three years after the institution of the suit.

White, Cartledge & Graves, of Austin, for appellant. Batts & Brooks, of Austin, for appellees.

RICE, J. (after stating the facts as above). The trial court filed the following conclusions of law, which we adopt:

"(1) I conclude that the title to said cattle passed to the plaintiffs by the written contract executed by the parties on the 30th of April, 1910, and that the condition in said contract providing for the feeding of said cattle was an independent condition.

"(2) I conclude that, under the facts and circumstances of this case, the plaintiffs were not entitled to a rescission of said contract, and that, if they suffered any injury by reason of its breach, their proper remedy would be a suit for damages."

[1] The title to said steers passed to appellants, notwithstanding the fact that they remained in the custody of appellees for the purpose of feeding and pasturing and until the purchase price was paid. See Midland Nat. Bank v. Strickland, 32 Tex. Civ. App. 91, 74 S. W. 588; Barker v. Bushnell, 75 Ill. 220; Puckett v. Reed, 31 Ark. 131; McCrae v. Young, 43 Ala. 622; Worth v. Northam, 26 N. C. 102. In Midland Nat. Bank v. Brookland, supra, as shown by the syllabus, where plaintiff sold to defendant a lot of stoves then stored in a warehouse, agreeing that they might remain there until called for, and defendant executed his note for their price, but before the stoves were called for they were destroyed by fire without fault on the seller's part, it was held that in law the delivery was complete, and, the title having passed to the purchaser, he could not resist payment of the purchase price because of such loss. Judge Templeton in said case quotes from Mr. Storey as follows:

"The principle is sound that a continuance of the· possession of the vendor does not prevent the delivery being complete, if nothing further remains to be done on either side, and the possession is by mutual consent. There is nothing in reason or principle to make the present case different, simply because the bales of cotton remained in the plaintiff's warehouse. It was part of the bargain that they should so remain, and a part of the consideration of the promise."

In Hotchkiss v. Hunt, 49 Me. 221, it is said:

"Where, by the terms of the agreement, or by fair implication therefrom, the article thus sold or resold is to remain in the possession of the vendor for a specific time or for a specific purpose, as a part of the consideration, and the sale is otherwise complete, the possession of the. vendor will be considered the possession of the vendee, and the delivery will be complete and sufficient."

See, also,. Storey on Sales, § 300.

[2] The fact that the cattle were to be fed on cake during the 30 days that they were to be held in' the pasture was not a condition precedent to the passing of title, but was an independent condition or covenant, and the sale, we think, was complete without the performance ·of such condition. See Springfield Seed Co. v. Walt, 94 Mo. App. 76, 67 S. W. 938; Bladsworth v. Rosenblatt, 20 Misc. Rep. 357, 45 N. Y. Supp. 931; Dox v. Dey, 3 Wend. (N. Y.) 356; Magnolia Compress ·Co. v. Smith, 75 Ark. 503, 88 S. W. 563; Eastern, etc., Ry. Co. v. Rand, 16 C. B. 2; Haynes v. Hayward, 41 Me. 488; Neill v. Whitworth, L. R. I. C. P. 684.

[3] The court having found that, notwithstanding the breach of said condition, no substantial injury or damage resulted to appellants therefrom, we therefore conclude that the court did not err in the further holding that no right to rescind existed. Finding no error in the judgment of the trial court, the same is in all things affirmed.

Affirmed.