### W. J. J. SMITH v. LUCY WRIGHT ET AL.

#### Delivered April 4, 1896.

1.  **Homestead—Abandonment—Executory Sale and Repurchase.**
    A widow sold her homestead by a deed expressly retaining the vendor's lien, and also secured the unpaid purchase money by deed of trust. She intended to remove to another county when the purchase money should be paid, and in the meanwhile lived on rented premises. The purchaser made default in payment, and she, having acquired no new homestead, foreclosed the trust deed and repurchased the property, with the intention of resuming its occupancy as a homestead, which she did as soon as she was able to regain possession. Held, as against a creditor obtaining and registering a judgment after her repurchase, that she had not been divested of her superior title to the property and her homestead right therein.

**2. Same—Grand Child as Constituent of Family.**

Where a widow has residing with her an orphan grandson, 13 years of age, and whom she supports, she is the head of a family and entitled as such to the homestead exemption.

APPEAL from Dallas. Tried below before Hon. EDWARD GRAY.

*Martin W. Littleton* and *Oeland & Smith*, for appellant.—1. A minor grand child who has a homestead of his own cannot join with his grandmother, a widow, as a member of her family and thereby acquire a homestead for the widow.

In this case then there is no legal or moral obligation upon the grand parent to support the grand child; nor is there such a legal or moral dependence by the grand child upon the grand parent for such support, as to make such grand parent the head of a family within the meaning of the law relating to the acquisition of a homestead. Mullins v. Sooke, 27 S. W. Rep., 926; Schneider v. Bray, 59 Texas, 673, (modifying Wolfe v. Buckley, 52 Texas, 41); Whitehead v. Nickelson, 48 Texas, 511; Ramsey v. Allison, 64 Texas, 700.

2. An involuntary sale by a trustee made in obedience to a deed conferring his powers and directing his duty, and the purchase at such sale by the beneficiary in said deed for the evident purpose of protecting the debt, but with the undisclosed intention of reacquiring the property for use as a homestead, is not sufficient to invest said property with the homestead exemption, as against a judgment lien fixed upon the land before occupancy thereof by said purchaser. Gage v. Neblett, 57 Texas, 374; Baird v. Trice, 51 Texas, 555; Wright v. Straub, 65 Texas, 64; Whittenberg v. Sloys, 49 Texas, 633; Cameron v. Gebhard, 85 Texas, 610.

3. We further suggest that, (1) The homestead was unconditionally abandoned; (2) That it could not be reacquired except by the head of a family, so as to make it a homestead; (3) That Mrs. Wright's immediate family of her own children grew to majority on the male side and married on the female side, leaving her a feme sole; (4) That there is no proof showing any legal or moral obligation upon her to support her grand child, Milton Pollard, and no corresponding dependence by him; (5) That plaintiff's lien was fixed before she gave a homestead character to the property in controversy.

*W. N. Coombes*, for appellees.—Appellees submit that the judgment of the court below is fully sustained by the court's findings of fact. Wolf v. Buckley, 52 Texas, 641; Schneider v. Bray, 59 Texas, 672; Watkins v. Davis, 61 Texas, 414; Gardner v. Douglas, 64 Texas, 76; Sanders v. Shehan, 66 Texas, 657; Freeberg v. Walzen, 85 Texas, 264; Gallagher v. Kellner, 29 S. W. Rep., 647.

LIGHTFOOT, CHIEF JUSTICE.—The statement of the case in appellant's brief is adopted, as follows: Appellant, plaintiff in the trial

court, brought this suit against Lucy C. Wright, Jesse Wright, Otis Britain and Kate Britain, his wife, in the District Court of Dallas County, Texas, in trespass to try title to a tract of land which is fully described in the pleadings, and prayed for judgment for the land, and that he be placed in possession of the same, for his damages and costs of suit.

The defendants answered by general demurrer, general denial and a plea of not guilty. The trial was had before the court April 15, 1895, and a judgment was rendered for the defendants, from which plaintiff appeals.

The conclusions of fact filed by the court below are adopted, as follows: "That the land in controversy was conveyed by William J. Walton to James W. Wright by deed bearing date January 12, 1862, and was paid for with the separate property of said James W. Wright, who was then a married man and the head of a family consisting of his wife, defendant L. C. Wright, and several children, and was used and occupied by said James W. Wright as a homestead until his death.

"2. That said James W. Wright died in 1881, leaving a written will whereby he bequeathed all his estate to his two children, defendants Jesse Wright and Kate T. Britain, who were then both minors, subject to the community interest and homestead rights of his wife, defendant L. C. Wright. That said will of James W. Wright was duly probated in the probate court of Dallas County, Texas.

"3. That said children and minor children of James W. Wright, defendants, L. C. Wright, widow, and Jesse Wright and Kate T. Britain, continued to use and occupy said premises together as a homestead until January 29, 1891, prior to which the defendant Jesse Wright had attained his majority, and defendant Kate T. Britain intermarried with her co-defendant Otis D. Britain.

"4. That on the said 29th day of January, 1891, the widow and children of said James W. Wright, defendants, L. C. Wright, Jessie Wright and Kate T. Britain, joined by her husband Otis D. Britain, sold said premises to one M. M. Miller, in payment for which Miller paid defendants $500 cash, which was applied to the payment of a joint debt of the defendants, and executed his two promisssory notes, one in the sum of twelve thousand dollars and the other in the sum of three thousand three hundred and seventy-one dollars, payable to the order of defendants, and the defendants executed their deed of conveyance of that date to said Miller, and retained the vendor's lien in the said deed of conveyance and in the said promissory notes to secure the payment of the purchase money, and Miller further secured the payment of the purchase money by his deed of trust to W. S. Coffman, as trustee.

"5. That after the execution of said notes, by an agreement between said Miller and defendants, Miller paid off the smaller note by conveying to the defendants certain real estate, which real estate was divided between the defendants—defendant L. C. Wright getting one-third, defendant Jessie Wright getting one-third, and defendant Kate T. Britain

one-third.    Part of said real estate being situated in Taylor County, and the balance being town lots in the city of Dallas—all of which was heavily encumbered to its value, and was lost by reason of said incumbrance thereon.

"6.    That Miller made default in the payment of the first installment of interest which fell due, and after due notice, and at the request of the defendants, W. S. Coffman, the trustee, duly sold said premises in accordance with the terms of the trust deed, on the first Tuesday in October, 1891, and at said sale the defendants purchased the premises, and Coffman, the trustee, conveyed said premises to defendants, and credited the amount of the bid on the note given by Miller to defendants for said land.

"7.    That at the time defendants sold said premises to Miller it was their intention, as soon as they received the money from Miller for said land, to remove to Taylor County, Texas, and reside there; but they did not remove, and defendant L. C. Wright did not acquire any other home or lands outside the incumbered lands conveyed her by Miller as above set out.    That she lived on a rented place in Dallas County from the date of the sale to Miller until about the 10th day of December, 1891.

"8.    That at the time defendants caused said Coffman, trustee, to advertise said premises for sale, it was the purpose and intention of defendant L. C. Wright to purchase said lands and return to and use and occupy the same as her homestead; that it was her intention to use and occupy the same as her homestead at the time of the purchase thereof by defendants and the intent and purpose to make the said premises    *    *    * until she got possession thereof; that immediately after the purchase thereof by defendants, and a month before plaintiff's judgment was recorded, L. C. Wright, for the declared purpose of residing thereon as a homestead, demanded possession of the premises from the tenants of M. M. Miller, who refused to give possession.    That the defendants caused a suit in trespass to try title to be instituted in the Dallas County District Court against said M. M. Miller and his tenants for the recovery of said premises on the 12th day of November, 1891.

"That said tenants of Miller abandoned said premises about the 10th day of December, 1891, and the next day thereafter the defendants L. C. Wright and Jessie Wright moved onto and took possession of the premises, and have continued to occupy and use the same as a homestead until the present time.

"9.    That defendant L. C. Wright declared her intention to purchase said premises and move upon and use and occupy the same as her home to her children and friends from the time the defendants requested Coffman, the trustee, to sell the same until she actually took possession thereof in December, 1891.

"10.    That at the time of the sale of the premises by defendants to Miller, for a long time prior thereto, and from thence to the present time, Milton Pollard, an orphan grandson of defendant L. C. Wright

lived with her as a member of her family, and has been supported by her ever since. That said Milton Pollard's mother, the daughter of the defendant Lucy C. Wright, died when said Milton Pollard was an infant, and she took him and cared for him from the death of his mother in the year 1878, for four or 'five years, and until his father's second marriage, when his father took him home and kept him until he died, during the year 1888, when defendant L. C. Wright again took him and has supported him and he has continued to live with her to the present time, and has great affection for him; that he was thirteen years old when the said defendant repurchased the land in controversy.

"11.  That W. P. Pollard died seized and possessed of three tracts of land, aggregating 300 acres; that upon said W. P. Pollard's death his widow took possession of the farm and has used the property and rents ever since. That the widow has married again and said Flemming now occupies the farm. That no part of the rents or of the property have been turned over to or have been used by the said Milton Pollard. That the said Milton Pollard has a brother about 25 years old, and a sister, Mrs. Flemming, who was married to Flemming at the time of his father's death.

"12.  That on the 4th day of November, 1891, one W. L. Williams recovered a judgment in the County Court of Dallas County against the defendant L. C. Wright for the sum of $611.10 and costs, amounting to $7.25. That on the 28th day of November, 1891, said W. L. Williams had an abstract of said judgment duly made, and on same day had an abstract of said judgment duly recorded and indexed in the record of judgments of Dallas County, Texas.

"13.  That execution was duly issued out of the County Court of Dallas County on said judgment in favor of said Williams and against defendant L. C. Wright on December 1, 1891, which execution was duly placed in the hands of the sheriff of Dallas County on the date of its issuance, and was duly returned nulla bona. That alias execution was duly issued out of said County Court on said judgment in favor of said Williams and against defendant L. C. Wright on the 2d day of September, 1892, and was duly placed in the hands of the sheriff of Dallas County, and was duly returned by him nulla bona.

"That pluries execution was issued out of said County Court on said judgment in favor of said Williams and against defendant L. C. Wright on the 31st of January, 1895, and was duly placed in the hands of the sheriff of Dallas County, and was by him duly levied on the property in controversy on the date of its issuance, and after due notice said property, as the property of defendant L. C. Wright, was regularly sold by the sheriff of Dallas County on the first Tuesday in March, 1895, to plaintiff W. J. J. Smith, to whom the judgment had been duly transferred by W. L. Williams prior to the issuance of the pluries execution, and the amount of the bid ($250) was duly entered as a credit on said execution, and said sheriff conveyed the property in controversy to plaintiff W. J. J. Smith, which deed was regular on its face.

"That no other executions were issued on said judgment except those above named; that is, no execution was issued on said judgment from the 2d day of September, 1892, until the 25th day of January, 1895."

The land in controversy was the homestead of Mrs. Wright and family at the time the judgment under which appellant bought was abstracted, and also at the time of his purchase at execution sale. Appellant's counsel, in a strong and able presentation of the case, insists that the homestead rights of Mrs. Wright were lost by abandonment upon the sale of the property, and that when it was bought in at the foreclosure sale and repossessed by her, she had no such family as would justify the acquisition of a homestead or protect it from forced sale.

It cannot be questioned, that upon the death of her husband the property was her homestead, and, as such, was exempt from forced sale. There is no statement of facts in the record, and it appears from the conclusions of fact filed, that at the time Mrs. Wright and her children sold the property to Miller, it was their intention, as soon as they received the purchase money from Miller, to move to Taylor County and reside there. She had no other homestead, and has never acquired any other. Upon the sale of the property to Miller, under an executory contract, the superior title remained in the vendors until the purchase money should be paid, and as it was never paid by Miller, this superior title was never at any time divested. During the occupancy of Miller under his executory contract of purchase, Mrs. Wright occupied a rented place in Dallas, awaiting the payment of the purchase money, intending as soon as such payment was made, to move to Taylor County. But, payment not being made, she took the proper steps to repossess her homestead and at once moved back to it. The case cannot be very different in principle from one in which the widow sought to exchange her homestead for another—the difference being, that here she was never divested of the superior title to her homestead property. Schneider v. Bray, 59 Texas, 672; Walker v. Davis, 61 Texas, 414; Childers v. Henderson, 61 Texas, 664; Hunter v. Wooldert, 55 Texas, 436; Cameron v. Fay, 55 Texas, 58; Chase v. Swayne, 88 Texas, 218.

But, outside of that question, it is clear that Mrs. Wright, even if she should be considered as having abandoned her homestead rights in the property (which we are not prepared to hold under the facts), was the head of a family consisting of herself and her orphan grand child, Milton Pollard, who had been a member of her family for many years, and she re-purchased the homestead property at the foreclosure sale intending to make it her future home, and immediately took the proper steps to that end before any rights were acquired by appellant. The property was clearly the homestead of Mrs. Wright, and her interest was not subject to forced sale. Clark v. Goins, 23 S. W. Rep., 703; Wolfe v. Buckley, 52 Texas, 641.

The judgment is affirmed.                              *Affirmed.*

Writ of error refused.