## STEVENS v. MATTERN.

(Court of Civil Appeals of Texas. Galveston. Feb. 18, 1914.)

SALES (§ 221*)—PASSING TITLE—TRANSFER BY BUYER—CAVEAT EMPTOR.

Plaintiff, in consideration of $10, gave B. an option to purchase two mules, the trade to be consummated by a date named, or the option forfeited. Plaintiff took the written option to a notary and directed him to draw an agreement for B. to sign in accordance therewith, with instructions to deliver the mules to him on signing the agreement. The notary, however, prepared and had B. sign a chattel mortgage on the mules as security for the price, and then delivered them to him, when he immediately traded them to defendant. Plaintiff repudiated the acts of the notary, but later agreed to make the sale on receiving a note from B. signed by another; but B., being unable to obtain this, returned the mules to plaintiff, after which they were taken from him by a deputy sheriff at defendant's request. *Held,* that no title to the mules passed to B., and, under the rule caveat emptor, defendant acquired no title by the transfer from B. to him.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 604, 605, 607, 608; Dec. Dig. § 221.*]

Appeal from Grimes County Court; Reid Reikard, Judge.

Action by B. M. Stevens against S. T. Mattern. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

W. W. Meachum, of Anderson, for appellant.

McMEANS, J. B. M. Stevens brought this suit against S. T. Mattern for the conversion of two mules, alleged to be of the value of $220, and for the reasonable value of their use from the time of such conversion. Defendant answered by general denial. The trial of the case before the court, without a jury, resulted in a judgment for the defendant, and plaintiff has appealed.

The substance of the testimony offered at the trial is as follows: Plaintiff owned two mules of the reasonable market value of $110 each. Joe Bates, Jr., wanted to buy them, and plaintiff offered to sell them at the price above stated. On December 21, 1912, the time the negotiations were opened, the parties prepared and signed the following writing: "This is a receipt for $10.00, option on a pare of mules for $220.00; this ten dollars is part payment for the mules; the trade is to be consummated the 28th day of December, 1912, if not it is forfeit." Just what the terms of the sale were the evidence does not disclose; but there can be gathered from the testimony that $50 was to be paid in cash on December 28, 1912, and the trade then to be finally consummated, or the option given Joe Bates, Jr., should be at an end. The mules at this time were in plaintiff's pasture adjoining his home. Plaintiff was following an occupation that required his absence from home from Monday morning until Friday night of each week. Before leaving his home the next Monday morning following the sign-

ing of the receipt or option, plaintiff took the paper to Hollis Williams, a notary public residing in the neighborhood, and, after stating the terms of the agreement with Bates, directed him to draw up an agreement for Bates to sign in accordance therewith, and told him that after Bates had signed such agreement to let him have the mules. Williams, instead of drawing the agreement as instructed, prepared and had Bates to sign and acknowledge an ordinary chattel mortgage on the mules as security for the purchase price, and then authorized Bates to take the mules, which he did. After thus getting possession, Bates traded the mules to S. T. Mattern, the defendant, for a three year old horse and $25 in money. When plaintiff returned to his home on the following Friday night the chattel mortgage was shown to him, whereupon he declared that the instrument was not such as he directed Williams to draw, and that he would not accept it as compliance by Bates with the terms of their agreement; and when he spoke to Williams the next day about the matter the latter acknowledged he had violated the instructions given him by plaintiff. This was on December 27, 1912, and the next day was the date agreed upon for consummating the sale. On the 28th Bates went to plaintiff's house and told him that he could not get the $50 cash, but that he had $7, which he would pay, and would get Mr. McMurrah to sign his note for the balance and deliver it to him on the following Saturday, and to this plaintiff agreed. On the following Saturday plaintiff again saw Bates, and the latter informed him that McMurrah would not sign the note, and plaintiff then told him to return his mules, and on the next morning about daybreak Bates returned the mules to plaintiff, and plaintiff again put them in his pasture. While plaintiff was away from home the succeeding week, the defendant Mattern, accompanied by a deputy sheriff and another party, entered plaintiff's pasture, took the mules, and carried them away. When plaintiff heard of this, and after Mattern had refused to surrender the mules to him, he consulted a justice of the peace with the view of taking legal action for the recovery of the mules; but this officer, claiming that his court was without jurisdiction, did not entertain plaintiff's claim. Whereupon this suit was filed in the county court. The justice of the peace testified that at the time plaintiff consulted him he (the plaintiff) stated that he had let Bates have the mules to trade them. This was denied by plaintiff.

We think that under the facts stated the title to the mules did not pass to Bates, and that defendant Mattern, by his purchase, did not acquire any greater title than Bates possessed. Being personal property, the rule caveat emptor applies.

We do not think that the statement of the justice of the peace as to what plaintiff told

him about letting Bates have the mules to trade is of such controlling force as to authorize an affirmance, in the face of the otherwise uncontradicted evidence of plaintiff.

We think the judgment of the court below should be reversed, and the cause remanded for a new trial, and it has so been ordered.

Reversed and remanded.