HALFF CO. v. JONES. (No. 7168.)

(Court of Civil Appeals of Texas. Dallas. June 27, 1914. Rehearing Denied Oct. 17, 1914.)

1. PRINCIPAL AND AGENT (§ 23*)—EXISTENCE OF RELATION—SUFFICIENCY OF EVIDENCE.

In a suit to rescind the purchase of an automobile because of false representations, evidence *held* to show that the purchaser did not know that a dealer in automobiles was not defendant's agent, but, on the contrary, to show that defendant, by its conduct, led him to believe that such agency existed.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 41; Dec. Dig. § 23.*]

2. PRINCIPAL AND AGENT (§ 25*)—ESTOPPEL TO DENY AGENCY—FRAUD.

Where, upon the sale of an automobile, defendant failed to inform plaintiff that a dealer was not its agent, but an independent dealer buying and reselling cars, and participated in the sale of the car, guaranteed that it would give satisfaction, and made false representations relative thereto, knowing that the dealer did not want the car for himself, but only for the purpose of selling it to plaintiff, and, if there was in fact a sale by defendant to the dealer, this was but a step in the sale of the car, and the title at once passed to plaintiff, and plaintiff did not know of the sale to the dealer, defendant could not deny that the dealer was its agent, and the rule that rescission cannot be invoked against a third party, upon whose fraudulent representation a purchase was induced, has no application.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 42–45; Dec. Dig. § 25.*]

3. SALES (§ 202*)—OPERATION AND EFFECT—WHEN TITLE PASSES.

Where a sale is a cash transaction, and neither party intends that title shall pass until inspection and acceptance and payment of the purchase price, the title does not pass until such payment.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 542–551; Dec. Dig. § 202.*]

4. APPEAL AND ERROR (§ 1054*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

The admission of evidence, if error, was harmless, where appellant proved substantially the same fact by its own witnesses, especially where the case was tried before the court with-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

out a jury, and such evidence was not necessary to support the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4185, 4186; Dec. Dig. § 1054.*]

5. SALES (§ 38*)—RESCISSION FOR FALSE REPRESENTATIONS—EFFECT OF GOOD FAITH.

Where the seller of an automobile represented that it was first class in all respects, that it was a 30 horse power automobile, and that it would develop as much or more power than any other 30 horse power car on the market, and that, if it would not go to plaintiff's home on high gear, it would not be his car, and the trade might be rescinded, such representations being false, the fact that they were made in good faith in the belief that they were true did not prevent a rescission.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 65–77, 85 ; Dec. Dig. § 38.*]

6. SALES (§ 38*) — RESCISSION — GROUNDS — WORTHLESSNESS FOR KNOWN PURPOSES.

Where an automobile was defective, and practically worthless for operation over the roads over which the purchaser, to the seller's knowledge, intended to operate it, he was entitled to rescind and recover back the purchase price.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 65–77, 85; Dec. Dig. § 38.*]

7. SALES (§ 279*)—WARRANTY TO GIVE SATISFACTION—DETERMINATION BY PURCHASER—CONCLUSIVENESS.

Where the seller of an automobile guaranteed that it would give satisfaction, the purchaser's determination that the guaranty was not complied with, made in good faith, was conclusive, since the sale was but a sale on approval.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 783–792; Dec. Dig. § 279.*]

8. SALES (§ 391*)—RESCISSION—RECOVERY OF PURCHASE PRICE.

Upon a purchaser's rescission, of the purchase of an automobile, for false representations, he was entitled to recover the entire consideration from the seller, though the difference between such consideration and the factory price of the car was paid to agents as commissions, and though the seller may not have actually received any of the purchase price.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1110–1127; Dec. Dig. § 391.*]

Appeal from District Court, Hunt County; C. L. Elder, Special Judge.

Action by H. E. Jones against the Halff Company and another. From a judgment for plaintiff, the defendant named appeals. Affirmed.

Alex F. Weisberg and Thompson, Knight, Baker & Harris, all of Dallas, for appellant. Clark & Leddy, of Greenville, for appellee.

TALBOT, J. Appellee, H. E. Jones, brought this suit in the district court of Hunt county, Tex., against appellant, the Halff Company, and against Beall Hardware & Implement Company, alleging that the Halff Company is a partnership composed of G. A. C. Halff and Melville Levy, and in business in the city and county of Dallas, Tex.; that the Beall Hardware & Implement Company is its agent in Hunt county, Tex.; that plaintiff was induced to buy a certain automobile from the Halff Company by divers false representations, guaranties, and warranties; that said representations, guaranties, and warranties were made by the agents of the Halff Company, acting within the scope of their employment, or by persons held out by the Halff Company to plaintiff as being its agents; that as soon as he discovered their falsity, and that the automobile could not be made to come up to said representations, guaranties, and warranties, he tendered back the said automobile to the defendants, who refused to receive the same. Plaintiff in his pleading further tenders back said automobile, disaffirms said contract of sale, seeks a rescission thereof, and judgment for the purchase price of the automobile, which he alleges was $1,675. He does not allege any cause of action for deceit or in the nature of deceit. Plaintiff also seeks judgment for rescission against the Beall Hardware & Implement Company in the event it should be held that the latter was not the agent of the Halff Company. Defendant the Halff Company denied that it, or any one acting with its knowledge or authority, real or apparent, made any false representations, guaranties, or warranties with reference to said automobile. It denied further that said automobile was sold by it to Jones, or by any one acting as its agent, real or apparent, or by any one held out by it to be its agent, and denied in detail the various allegations in plaintiff's pleadings contained, and alleged further that plaintiff was precluded from rescinding the sale of said automobile, for that he has used and operated same for a considerable period of time after knowing and realizing its alleged defects. The Beall Hardware & Implement Company answered, and prayed that, if plaintiff procured judgment of rescission against it, a like judgment be rendered in its favor against the Halff Company; but, as no judgment for or against it was rendered, its pleadings become immaterial. The case was tried without a jury, and judgment rendered by the court on November 25, 1913, in favor of the plaintiff, rescinding the contract of purchase of said automobile, and giving plaintiff judgment against defendant the Halff Company in the sum of $1,675, and decreeing said automobile to defendant the Halff Company. It was further adjudged that plaintiff take nothing against the defendant the Beall Hardware & Implement Company, and the latter was given no judgment against the Halff Company. From the judgment rendered, the Halff Company appealed.

At the request of the appellant, the trial judge prepared and filed conclusions of fact and law. The conclusions of fact are as follows:

(1) A short time prior to December 28, 1913, plaintiff, being then the owner of a Buick automobile, and desiring to get a better and a more up-to-date car than the one he owned, applied to Bob Mitchell, the owner of a garage in Celeste, where the plaintiff lives, and told

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Mitchell that he would like to have a better and more "classy" car. Prior to that time plaintiff had been in Dallas, had gone through the salesroom of the Halff Company, defendant herein, and had been shown some of its Chalmers cars and literature. He told Mitchell that he was impressed with the Chalmers car. Mitchell was an agent for another kind, but was not an agent for the Chalmers. He undertook, however, to get the Chalmers agency and was referred by the company in Detroit to the Halff Company at Dallas. He applied to the Halff Company, and was told by it that the defendant Beall Hardware & Implement Company was its agent, and referred Mitchell to the last-named company. Mitchell took the matter up with that company, and it was agreed that, if a sale was made, the "commissions" should be divided between it and Mitchell.

(2) After Mitchell and the Beall Hardware & Implement Company had the agreement about "the commissions," Bert Beall, president and manager of that company, went to Celeste, and he and Mitchell began negotiations with plaintiff, looking to the sale of a Chalmers car. They examined plaintiff's Buick car, agreed that it was worth $550, and proposed to accept it at that amount in part payment for any Chalmers car plaintiff might purchase. With this understanding plaintiff delivered to them the said Buick car, and the same was at that time of the reasonable cash value of $550.

(3) Plaintiff having explained fully the kind of a car he desired—a 4 cylinder, 4 passenger, 30 horse power car, one that was light and would climb hills, pull over rough roads, and in which he could get about easily and quickly in the black land country where he lives—said Beall phoned to defendant Halff Company to ascertain if they had on hand a 4 cylinder, 4 passenger, 30 horse power Chalmers. Being informed that they had such a car, plaintiff and Mitchell soon thereafter went over to Dallas to inspect the car, and, if satisfactory plaintiff was to pay therefor, and they were to bring it home.

(4) While in the salesroom of the Halff Company at Dallas, and before the car was brought out, Melville Levy, a member of the firm of the Halff Company, stated and represented to the plaintiff that the Chalmers 4 cylinder, 4 passenger, 30 horse power car (the car then under negotiations) was first-class in all respects; that it was a 30 horse power car, would develop as much or more power than any other 30 horse power car on the market; that it would climb hills and pull through sand easily and smoothly; and further stated in effect that if said car, when purchased, would not go from Dallas to Celeste on high gear, it would not be plaintiff's car; that the trade might be rescinded. The car was brought to the salesroom to be delivered, but it began raining, and for that reason was not taken at that time. On the following Sunday Mitchell returned to Dallas and drove the car to Celeste and delivered it to the plaintiff. I further find that plaintiff relied on each and all of said statements and representations, and would not have purchased or paid for the car if they had not been made.

(5) The car was defective and failed to be as it was represented. It did not give satisfaction, and could not be made to give satisfaction to the plaintiff, and was in fact entirely worthless for the purposes for which he purchased the same, and these purposes were made known to both defendants before the contract of purchase was made.

(6) As soon as the car reached Celeste, both defendants were notified of the fact that the car was defective and not as represented. The defendant Halff Company immediately sent an expert mechanic to remedy the defect, but he failed to do so. This was repeated five or six times, with the same result, until plaintiff, finally becoming satisfied that it was useless to wait longer for defendants to remedy the trouble (that it could not be remedied), tendered the car back to defendants and demanded the payment of the amount he paid for the same, to wit, $1,675. This defendants refused to repay, and plaintiff has, since then, held the car subject to the orders of defendants and has not used the same. Under the circumstances, the car was tendered back within a reasonable time.

(7) I find that each of the defendant companies represented to plaintiff that the Beall Hardware & Implement Company was the agent of the Halff Company, and that the plaintiff did not know either actually or constructively of any limitation of the power of such agent or of the existence of any contract defining their relationship, and that, in purchasing the automobile in question, plaintiff acted in the belief that said agency existed.

(8) I find that, in the negotiations leading to the contract of purchase, the Beall Hardware & Implement Company made only such representations respecting the car as the literature of the Halff Company contained respecting the same, but I further find that the car was not as represented by such literature.

The conclusions of law filed by the court are as follows:

(1) "That the plaintiff is entitled to rescind the contract and recover the purchase money paid by him for the automobile in question, with six per cent. interest thereon from January 1, 1913."

(2) "I further conclude that plaintiff is entitled to recover said sum from the defendant the Halff Company alone, but, if necessary, I would hold that he is entitled to recover the same against the Beall Hardware & Implement Company. In that event, however, I would hold that the latter company is entitled to recover the amount from the Halff Company on its cross-bill. I therefore deem it unnecessary to render any judgment against the Beall Hardware & Implement Company. I accordingly enter judgment for the plaintiff for the sum of $1,675, together with 6 per cent. interest thereon from January 1, 1913, against the Halff Company, and that plaintiff take nothing against the other defendant."

[1] Appellant's several assignments of error complain of the admission of certain testimony, over their objections, and challenge the sufficiency of the evidence to authorize the court's findings of fact and to support the judgment rendered. These assignments will not be stated and discussed in detail. The court's conclusions of fact were, in our opinion, authorized by the evidence, and they are adopted by this court. We are also of the opinion that the pleadings of the plaintiff and the facts found by the court warranted the judgment rendered. We agree in the main with the views expressed by counsel for the appellee in reference to the pleadings, and the evidence adduced and the law applicable thereto, and shall adopt largely their line of argument. We think, as contended by them, that as between appellant and the appellee, Jones, appellant is in no position to deny that the Beall Hardware & Implement Company was their agent in the transaction in question, even if it was not so in fact. If the Beall Hardware & Implement Company was only a "dealer," and not the agent, of appellant in the transaction,

it devolved upon appellant, under the facts of the case, to show not only that fact but that appellee knew it when the sale was made. Appellant not only failed to do this, but, on the contrary, as is reasonably deducible from the evidence, led appellee by its own conduct to believe that the agency existed. The witness Mitchell, after testifying that he was engaged in the automobile business that appellee told him that he wanted a "classier" car than he had, and that he told appellee that he would write and get the agency for a better car, and that he had written to appellant for such agency, said, "They (the Halff Company, appellant) told me the Beall Hardware & Implement Company was their agent." The appellant was selling the Chalmers car, and appellee, Jones, went to Dallas to examine one, and, on cross-examination of him by the defendant Beall Hardware & Implement Company, he testified, without objection, that he had "received information" before the trade that the Beall Hardware & Implement Company was such agent, and the fair and reasonable inference is that he got the information from appellant itself. After testifying about certain conversations with Beall and Mitchell at Celeste, when the negotiations for the purchase of the automobile began, appellee testified that he told Beall and Mitchell that he would go to Dallas, and on the car talk to the Halff people about it, and, if he found it to be what he wanted, he would take it; that several days thereafter Mr. Levy, of the Halff Company, phoned him as follows:

"We have got a car down here I understand you want. When are you coming down to look at it?"

And that he replied:

"Just as soon as the roads dry, and I think I have got a little show."

He further said:

"I was in Dallas by myself when I saw the Chalmers car the first time. I received information that the Beall Hardware & Implement Company had the agency for the Chalmers cars in this county."

He further said:

"The Halff Company never did say to me what their relations were with the Beall Hardware & Implement Company further than they said, 'We will phone Beall.' They phoned Beall that evening, but didn't say anything about their relations. When the trade was made (at Celeste), Mr. Beall phoned Mr. Levy about the car."

Bert Beall testified:

"My first connection with this Jones transaction was Mr. Mitchell, phoned me and says, 'I have got a customer for a Chalmers car;' and says, 'If you will come up here I believe we can sell a car;' and says, 'He has a Buick, and wants us to take it in on it;' and I says, 'All right, I will come up.' I don't know that he said anything over the telephone about a commission for him, but he did that later. I then went to Celeste. I think Mr. Mitchell said he had taken it up with the Halff Company, and they stated we were agents for it in Hunt county, and any sales would have to be made through us. I think this conversation took place between Mr. Mitchell and Mr. Jones and I, in which Mr. Mitchell stated he had written the Halff Company, and they stated that we were agents of the Halff Company for Hunt county. I acted as though we were agents and nothing else, and never said anything about any limitations on my power or authority. In taking the agency for this car, I had their literature."

Mitchell testified, without objection, as follows:

"Yes, sir; I made an effort to get the agency of the Chalmers car before I phoned Mr. Beall, but I did not succeed. If I am not mistaken, I tried to get the agency from the Chalmers people at Dallas, and learned that the Beall Hardware & Implement Company already had the agency, and knew that fact when I called Mr. Beall. In that conversation with Mr. Beall I asked him if I sold Mr. Jones a Chalmers if he would make a division of the commission with me, and he agreed to that and did so."

[2, 3] Under the foregoing and other facts shown in the record, appellant should not be heard to deny, as against appellee, that the Beall Hardware & Implement Company was its agent in the sale of the automobile and allowed to defeat a rescission thereof on the ground that the sale was made by it to Beall Hardware & Implement Company, and not to appellee. As argued by counsel:

"Having stated that Beall Hardware & Implement Company was its agent, having failed to disclose the actual relations, having participated in the sale of the car to appellee with Mitchell, to whom it had made the statement, having guaranteed to appellee that the car would give satisfaction, and made to appellee the representations upon which appellee relied in making the purchase, knowing that Beall did not want the car for himself, but was only doing what he did that the sale to appellee might be made, it seems idle to argue that appellant can escape the consequences of its own acts and its own deliberate agreement made directly to appellee himself, merely because the Beall Company may not have been technically its agent under the special contract appellee knew nothing about."

The sale was a cash transaction, and it is plain from the facts in the case that neither party thereto intended that the title to the automobile should pass until the car was inspected and accepted by appellee and the purchase money paid. In such a case it is the well-settled rule in this state that title does not pass, in the absence of proof of a contrary intention, until the purchase money is paid.

In Victor Safe & Lock Co. v. Texas State Trust Co., 101 Tex. 94, 104 S. W. 1040, our Supreme Court, speaking through Mr. Justice Williams, said:

"In some jurisdictions the right of property is held to pass with the delivery unless at the time the right to retake is expressly declared by the seller. We have not gone so far. Our cases proceed on the theory that until payment has been made, or waived, the contract remains executory, and that delivery in such case is not a completion of the contract, except as an intention to so regard it, as expressly declared or can fairly be inferred from the circumstances attending."

The evidence is sufficient to justify the conclusion that the Beall Hardware & Imple-

ment Company had no desire to purchase the automobile in question on their own account; that they had never seen it, and were acting solely in the transaction in order that the sale might be made to appellee, Jones, and that appellant knew this to be true. Indeed, it is clear, we think, from the evidence, that there was in fact but a single transaction—a sale to Jones participated in by all the other parties—and appellant cannot avoid responsibility for its own acts and conduct, its own solemn obligation, by pleading a private agreement between it and Beall. If title to the automobile ever in fact passed to the Beall Hardware & Implement Company, such passage of title was but a step in the sale to appellee, Jones, and title likewise at once passed to him. It is plain that appellee Jones knew nothing of any sale to the Beall Company, and that in truth and in fact the real transaction was a sale made by appellant itself to the appellee upon condition that the car gave satisfaction to him. The general rule, therefore, that rescission cannot be invoked against a third party, upon whose fraudulent representations a purchaser has been induced to buy, has no application. There is not a particle of evidence in the record, so far as we have been able to discover, that appellee knew anything at all of a sale, if there was such, from appellant to the Beall Hardware & Implement Company, and it seems undisputed that appellee knew absolutely nothing of the special contract with Beall of that company or of any limitation on Beall's authority. Appellant admits, as we understand, that it guaranteed that the automobile would give satisfaction to appellee, and we think the conduct of appellant clearly indicates that it was it making the sale to appellee.

[4] We discover no reversible error in the admission of the testimony to which appellant's seventh, eighth, ninth, and tenth assignments relate. If this testimony was not admissible to prove that Beall Hardware & Implement Company was appellant's agent in selling the automobile to appellee, or to show lack of knowledge on the part of appellee of the claim that appellant had sold the automobile to that company before appellee saw it and agreed to take it, then the error in admitting it was harmless, because appellant itself proved substantially the same facts by its own witnesses. Besides, the case was tried before the court without the intervention of a jury, and we do not understand that the evidence objected to was necessary to authorize and support the judgment.

[5-7] We do not agree with the contention that the court erred in rendering judgment in favor of appellee against appellant for the reason that the statements which appellee attributed to Levy, a member of appellant's firm, are shown by the undisputed evidence to have been made in good faith by the said Levy, and with every reasonable ground to believe that they were true when

made, and hence do not constitute that character of fraud which would entitle appellee to rescission. "One may have a contract of purchase rescinded for false material representations on which he relied and acted, though they were made in ignorance of their falsity," and the intent of the party making the representation to induce a contract is wholly immaterial; the question is whether the other party has been misled and injured by the false representations. These declarations of the law are supported by numerous authorities, some of which we cite. Jesse French Piano & Organ Co. v. Nolan, 38 Tex. Civ. App. 395, 85 S. W. 821; Cabaness v. Holland, 19 Tex. Civ. App. 383, 47 S. W. 379; Carter v. Cole, 42 S. W. 369; Culbertson v. Blanchard, 79 Tex. 486, 15 S. W. 700; Ramey v. Allison, 64 Tex. 697; King v. McAdams, 145 S. W. 1032; Wilson v. Carpenter, 91 Va. 183, 21 S. E. 243, 50 Am. St. Rep. 824.

The representations in the instant case were that the automobile purchased by appellee was first-class in all respects; that it was a 30 horse power automobile, would develop as much or more power than any other 30 horse power car on the market; and that, if it would not go to Celeste on high gear, it would not be plaintiff's car, and that the trade might be rescinded. The representations were relied on by appellee in purchasing the automobile, and were not true. The automobile, according to substantial testimony offered by appellee, was defective and practically worthless, at least for operation over the roads that appellant was informed it was to be operated over by appellee, and where he in fact intended to operate it. In addition to the representations referred to, appellant, it seems, expressly guaranteed that the car would give satisfaction. This being true, appellee's determination of the matter, if made in good faith, was conclusive as to whether or not the guaranty had been complied with. This is so, because the sale of the automobile to him was but a sale on approval. But the law is that if the automobile was worthless for the purposes for which it was known to appellant to have been intended, and appellee, as soon as he discovered this fact, promptly notified appellant and tendered back the automobile, he was entitled to rescind the contract and to recover back the purchase money paid for it. Southern Gas & Gasoline Engine Co. v. Peveto, 150 S. W. 279. Without detailing it, we will say the evidence was sufficient to render applicable the principle of law above stated, and failed to show a waiver of appellee's right to rescind the contract.

[8] The judgment is not excessive.

"Having induced appellee to purchase the car upon false representations and upon an unqualified agreement that it should prove satisfactory to him, appellant must pay back the entire consideration paid by appellee, including the 'commissions' the other parties received."

The pertinent facts on this phase of the case are that Jones paid $1,675 for the car

—$1,125 in cash and a Buick car worth $550. This car was accepted as so much cash, and that amount was its cash market value. Beall was to divide the "commissions" with Mitchell on the sale of appellant's car. The Buick was sold a "few days" after it was taken by them, and the proceeds divided according to their agreement. The "commissions" were the difference between $1,675, the retail price of the car, and $1,475, the factory price appellant received. In other words, it was $200, and Mitchell received half of it. So, as said by counsel for appellant, that whether appellant actually received any of the proceeds of the Buick automobile and of appellee's check given in payment of the automobile in question is not material. The material fact is that it was paid for the automobile; that it caused appellee to part with the entire consideration, the sum of $1,675; and the court properly gave judgment for that amount.

Our conclusion is that none of appellant's assignments disclose any such error as requires a reversal of the case, and the judgment is affirmed.