JOHN E. MORRISON & CO. et al. v.
MURFF.   (No. 7817.)

(Court of Civil Appeals of Texas. Galveston.
May 6, 1919. Rehearing Denied
May 15, 1919.)

1. SALES &marker;199—PASSAGE OF TITLE—INTENTION.

Where the purchaser of an automobile turned in his old car for $500 of the price of about $2,000, telling the seller to keep the new car for him, the purchaser, as agent, there was a complete sale passing title, despite the absence of change of possession and nonpayment of the balance of the price; the intention of the parties that title should pass being controlling.

2. EXEMPTIONS &marker;16—AUTOMOBILE—FATHER AS "HEAD OF FAMILY."

In view of Const. art. 16, §§ 49–51, a divorced father, who had not been legally deprived of the custody of his son or daughter, with whom the son was living, except for temporary absences, and who contributed to the daughter's support, though she was living with her mother, was the "head of the family," within Rev. St. 1911, art. 3785, subd. 10, entitling him to exemption of his automobile from forced sale.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Head of a Family.]

Appeal from District Court, Harris County; John S. Prince, Judge.

Suit by L. A. Murff against John E. Morrison & Co. and others. From judgment for plaintiff, defendants appeal. Affirmed.

Hutcheson, Bryan & Dyess, of Houston, for appellants.

Vinson Elkins & Wood and Wharton Weems, all of Houston, for appellee.

GRAVES, J. Morrison & Co., a corporation, levied an execution upon and had the sheriff of Harris county to take into possession for sale thereunder, a Davis Chummy roadster automobile belonging to Murff. Murff then filed this suit in the Fifty-Fifth district court against the company, making the sheriff a party, claiming the car levied upon to be exempt to him by virtue of article 3785, Revised Statutes of Texas, under sworn petition alleging that he was the head of a family, that he owned no other property of the same kind or character, that being the only automobile, carriage, or vehicle then belonging to him, and prayed for an injunction restraining both parties sued from selling the car so seized.

The defendants joined in a duly verified answer denying the allegations of Murff's bill, and in turn averring that he had been divorced from his wife, was no longer the head of a family as contemplated by our exemption statutes, having no members of his family then living with him, and that he did then own other property of the same kind and character as that levied upon.

Issues having been thus joined upon the application for injunction, the district judge heard the evidence offered, and thereupon entered his order directing issuance of the writ as prayed for, and restraining the defendants from selling the car pursuant to the levy made. From this judgment they present this appeal.

Appellants contend that the order awarding the injunction cannot stand, because, they say, the undisputed evidence showed, both that Murff was the owner of two automobiles at the time of the levy, and that he was not then the head of a family within the spirit and meaning of the exemption statutes.

Since only one such vehicle is exempt to a family, or the head of a family, under subdivision 10 of the article invoked (3785), it follows that, if either claim thus made was established as a fact, the injunction should not have been granted.

It is quite true that the evidence is entirely free from dispute or controversy; but, after a most careful consideration of the whole of it, the court is unable to agree with appellants as to its legal effect.

[1] The question as to whether or not Murff owned at that time another automobile than the Davis car levied on depends upon the effect to be given a transaction of his with Mr. B. C. Caveness, the material facts concerning which may properly, we think, be thus stated:

By agreement of counsel for both litigants, this affidavit of Mr. Caveness was admitted in evidence as confirmatory of the detailed testimony of Murff:

"I, C. B. Caveness, upon being duly sworn, state upon oath, that on or about June 8, 1918, I came to Houston for the purpose of trading in an old Case car for a new car and I saw L. A. Murff, who was at that time selling cars in Houston. He had at that time a Case car at his place of business and I told him that I wanted that car and he agreed to sell it to me. I bought the car for $2,050.00, and Mr. Murff took my old car in lieu of the first payment of $500.00. At the time I bought the car I was engaged in the sawmill business near Huffsmith, Tex., and was unable to take the car back with me at that time, so I told him to keep it for me until I sent for it. Later on, I decided that I would get Mr. Murff to sell the car, so I wrote him to sell it for me for not less than $1,750.00, as I did not want to lose more than $300.00 on the deal.

"Mr. Murff still has the car in his possession as my agent and he has authority to sell it for me at the above price.

"I understand that the title to this car is questioned, and I am making this affidavit for the purpose of showing that the car is my car and not Mr. Murff's car.    C. B. Caveness."

&marker;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Murff himself, as a witness upon the stand, went fully into the details of the matter; but his version did not materially differ from that thus given by Caveness. He was engaged in selling automobiles in Houston, but had at that time in his possession only one other car than the Davis roadster levied upon, a new seven-passenger Case, the one Caveness so testifies he bought.

There is no suggestion of collusion between them, nor of fraud on the part of either. Both positively swore that the sale of this particular new car was actually agreed upon and made at the fixed price of $2,050, $500 of which was represented by the old Case car Caveness turned in at the time of the purchase in lieu of cash, leaving a balance due by him of $1,550; that when he drove his old car to Murff's place he said: "Here is the old car. I want the new one, but I am not in a position to take it back with me now"—and left the new one in Murff's possession to be kept for him until he sent for it. Murff immediately sold the old car and appropriated the proceeds to his own use and benefit; his testimony as to their further understanding about and disposition of the new one being thus:

"Q. I believe you stated that subsequent to that he asked you to sell that car for him. Is that correct; that is, the car that he purchased, the new Case car? A. Yes, sir.

"Q. Were you holding that as an agent for the purpose of selling that car for Mr. Caveness, or not? A. I was.

"Q. I believe you stated that Mr. Caveness was unable to take the car out and agreed that you might sell it as his agent, is that correct? A. That was my understanding of it; yes, sir. It has always been my understanding that, if a man came and picked out an automobile and paid $500 on it, it was his car and subject to his instructions."

There was no change in these arrangements up to the time of this trial, the new car being still so in Murff's possession.

Such was the sum and substance of the transaction, without going into further and immaterial details. The new car was undoubtedly subject to the orders of Caveness and could have been taken out by him at any time; it was undisputedly the intention of Murff to sell, of Caveness to buy, and both thought that a sale of the machine had actually been made and that title had passed. It is true no particular time for payment of the balance of the agreed price was fixed, and that shortly after the purchase, when Caveness told Murff he did not then have the money to pay the car out, Murff offered to take his notes for the balance, which Caveness declined to give, saying that he wanted to pay cash for it and asking Murff to hold it a little while longer for him; but that would not uproot the accomplished fact that a sale had already been specifically agreed upon, that nothing further remained

to be done to, and that delivery of the subject-matter thereof had been effected by the turning over of possession of it by the buyer to the seller to be held subject to the former's order.

There is an utter absence throughout the entire body of evidence of any intimation even that full payment in cash of the balance of the purchase price before removal of the car, or in the alternative the giving of a note therefor, were made or understood to be conditions precedent to completion of the contract of sale, or that they were part and parcel of it. To now read that effect into the dealings of the parties anyway, as appellants insist should be done, would simply amount to the making of a new contract for them; and right there, we think, lies the clear differentiation between the case here presented and the line of authorities relied upon and so forcefully discussed in this court by counsel for appellants. The leading case perhaps, and the one seemingly presenting the principle upon which they all proceed, is Lang v. Rickmers, 70 Tex. 108, 7 S. W. 527, where our Supreme Court, through Justice Stayton, says:

"When the contract of sale is that the goods shall be paid for with cash, or notes executed by the vendee or a third person, the sale is on condition that the payment be made, and until this is done the title to the goods remains in the vendor, notwithstanding they may have come into the possession of the vendee, unless it appears that they were delivered to the purchaser with intent to waive the condition of payment."

Of similar import also are the following additional ones: Orange Iron Works v. Stafford, 178 S. W. 683; Stevens v. Mattern, 164 S. W. 451; Continental Bank & Trust Co. v. Hartman, 129 S. W. 179; Slayton & Co. v. Horsey, 91 S. W. 799; Victor Safe & Lock Co. v. Texas State Trust Co. et al., 101 Tex. 94, 104 S. W. 1040; Halff Co. v. Jones, 169 S. W. 906.

An examination of these cases discloses that in each and all of them the understanding and clear intention of the parties was that no sale should take place until the cash had been paid or the notes given; that is, that such conditions precedent constituted part of the contract itself, the very thing we have found lacking here. In all those instances the sale was therefore plainly a conditional one, and title did not pass until the condition had been complied with or waived, notwithstanding the fact, as Judge Stayton says in the portion quoted from his opinion in the Lang Case, possession may have in the meantime been given to the would-be purchaser.

But analogy does not exist between that class of cases and the one before us. Here the agreement to make the sale was specific, complete, nothing remained to be done to identify the property, and delivery was

actually effected; in other words, the sale was absolute, consequently the title passed. Brewer v. Blanton, 66 Tex. 532, 1 S. W. 572; Carriage Co. v. Lusk, 11 Tex. Civ. App. 493, 33 S. W. 154; Bank v. Strickland, 32 Tex. Civ. App. 91, 74 S. W. 588; Leonard v. Davis, 1 Black, 476, 17 L. Ed. 222; Blanton v. Langston, 60 Tex. 149; Barrett v. Goddard, 2 Fed. Cas. 911, No. 1046.

Neither does it make any difference that possession was not actually turned over to Caveness—the undisputed proof being that Murff was to keep the car for him until he called for it—under the principle thus stated by Judge Story in Barrett v. Goddard, supra:

"The principle * * * is sound; that is, that a continuance of the possession of the vendor does not prevent the delivery being complete, if nothing further remains to be done on either side, and the possession is by mutual consent." "There is nothing in reason or principle to make the present case different, simply because the bales of cotton remained in the plaintiff's own warehouse. It was part of the bargain, that they should so remain, and a part of the consideration of the promise."

To the same effect are Stone v. Davis, 175 S. W. 772, and Hopkins v. Partridge, 71 Tex. 606, 10 S. W. 214.

Moreover, the intention of the parties themselves, to be asceratined from their express declaration, or from the circumstances presented, or both, is the dominating consideration in determining whether or not title has passed in the sale of a chattel. 35 Cyc. 278; Whitsett v. Carney, 124 S. W. 444.

Under these conclusions, it is deemed unnecessary to pursue the discussion further; we think title to the Case car had passed fom Murff, which left him then owning only the one levied upon.

[2] But was his status toward a family such as to entitle him to claim it to be exempt? It is thought an affirmative answer should be given to this inquiry. Murff and his wife were divorced by judgment of the district court of Harris county, Tex., rendered two years and three months prior to this injunction hearing. They had two children, a son 15 and a daughter 17; but the decree did not award their custody to either parent. After the divorce the daughter lived continuously with the mother, and the son with the father for the greater portion of the time until he entered a naval training camp in February before the trial late in March, he having only been with his mother when his father was out of town, and almost his entire expenses during that intervening period, including his board and tuition at different schools, being paid for by his father; indeed, when the boy, then only 17 years old, left for the training camp, the father gave him enough money to last until his first pay day and sent another and final remittance to him there the latter part of February. At the time this testimony was given, March 25th the government was furnishing everything the boy needed.

While, as before stated, the daughter did not live with her father subsequent to the divorce, he did contribute to her support also, saying, when asked in what way:

"In every particular that she has ever called on me. She has had a drawing privilege on my bank account since she graduated, and she has had the use of my automobile whenever she wanted, and everything else that I had that she wanted she has had.

"Have you ever sent anything out to her in the way of clothing and food since she has been living with her mother? A. Yes, sir.

"Q. State briefly. A. Nothing in the way of food, except fruit and such things. She goes to town, and I have an account at most all the stores in town, and she would go and buy her shoes and clothes when she was not working and pay for them with a check on my account."

It is thought these facts easily make a different case from that presented in Hammond v. Pickett, 158 S. W. 174, decided by this court, to which appellants refer. There a divorce from bed and board in favor of the wife had been granted by the courts of Louisiana, the decree giving her custody of the sole child of the marriage. Neither she nor the child had ever lived in Texas, nor were shown to have had any intention of doing so. Following the divorce, Pickett himself had moved to Texas, where he had since lived as a single man, and three years afterwards set up these foreign relations as constituting him the head of a family within the meaning of the exemption statutes and entitling him to protection as such; the court in part said:

"The custody of the child was awarded to the mother by the decree of divorce, and is a member of her family, and not of his. He has no family unless the wife or child constitute it, and the one has been freed from that relation by the decree of divorce, and the other, so far as he is concerned, by the judgment of the court which deprives him of its custody."

Surely the same principle could not alike rule that case and this, for here Murff had not been deprived of the legal custody of either of his children, and was actually living with and almost entirely supporting one of them except for his temporary absence in a training camp. It is true the court in the opinion quoted from further remarked that the exemption under our statute is not to the head of the family, but to the family, and that is the wording used. The distinction seems to us artificial, however, and to be wholly without point as applied to the situation here, because, when the provisions of the Constitution upon which the statute depends are looked to, the terms are found to be used interchangeably. Constitution of Texas, art. 16, §§ 49, 50, 51.

Our decisions have likewise generally so

treated them, and it has often been held, that—

"The mere moral and natural obligation to support and a condition of dependence and actual support are sufficient to constitute one the head of a family." Wolfe v. Buckley, 52 Tex. 641; Lane v. Phillips, 69 Tex. 240, 6 S. W. 610, 5 Am. St. Rep. 41; Barry v. Hale, 2 Tex. Civ. App. 668, 21 S. W. 783; Smith v. Wright, 13 Tex. Civ. App. 480, 36 S. W. 324; Bank v. Cruger, 31 Tex. Civ. App. 17, 71 S. W. 784.

And further that the divorced husband may still be the head of a family, despite the failure of his children to constantly live with him and his acquiescence in their temporary residence with their mother. Zapp v. Strohmeyer, 75 Tex. 639, 13 S. W. 9; Hall v. Fields, 81 Tex. 553, 17 S. W. 82; Bahn v. Starcke, 89 Tex. 203, 34 S. W. 103, 59 Am. St. Rep. 40.

In Stone v. McClellan, 36 Tex. Civ. App. 364, 81 S. W. 751, it is said that the right of a husband to the custody of and his liability for the support of his children constitutes him the head of a family, while in Speer et al. v. Sykes, 102 Tex. 451, 119 S. W. 86, 132 Am. St. Rep. 896, the Supreme Court, through Judge Brown, held that a divorce and award of custody of the children to the mother did not discharge the father's legal and moral obligation to support them, nor deprive him of the homestead right as the head of a family, even though his children lived apart from him. The holding in Shook v. Shook, 145 S. W. 682, in which a writ of error was denied, is of like effect.

Under these pronouncements, it is not perceived how the appellee here could properly have been denied the writ he sought, and the trial court's action in awarding it is in all things affirmed.

Affirmed.