Houston & Texas Central Railroad Company v. John P. Hughes et al.

Decided January 5, 1911.

**Mistake—Payment—Case Stated.**

A railway company, settling with a contractor for construction work, overpaid him, by mutual mistake, for a part of the work done. This overpayment the contractor, in ignorance of the mistake, paid over to subcontractors who had done the work for which it was paid, and who were transient and irresponsible persons. Held that this fact constituted no defense to an action by the company to recover from the contractor the amount of such overpayment.

Appeal from the County Court of Tarrant County. Tried below before Hon. C. T. Prewett.

*Baker, Botts, Parker & Garwood, Spoonts, Thompson & Barwise,* and *W. H. Francis,* for appellant.—The money herein sued for having been paid to Hughes through a mistake, it was not any defense that he had paid it over to his subcontractors before he had knowledge of the double payment and the mistake, and the court should have so instructed the jury. Kingston Bank v. Eltinge, 40 N. Y., 391; Phetteplace v. Bucklin, 27 Atl., 212; Moors v. Bird, 77 N. E., 645.

*B. P. Ayers* and *Slay, Simon & Wynn,* for appellee.—If the $985 was a double payment, and this double payment was made through an error of plaintiff, Hughes should not be made to suffer loss on account of such error. 30 Cyc., 1321 et seq., and cases cited.

WILLSON, Chief Justice.—John P. Hughes, deceased, under a contract with appellant, constructed for it the roadbed for a line of railway between the town of Burnet and the town of Lampasas. By the terms of the contract appellant was to pay Hughes specified prices for the different kinds of work necessary in the construction of the roadbed, among which was $6 per cubic yard for box culvert masonry and $5 per cubic yard for paving grouted. By direction of appellant's engineer the paving to be done in the culverts was changed from grouted, as specified in the contract, to rubble. One hundred and ninety-seven cubic yards of this kind of work was done by Hughes, and was classed by appellant's engineer and carried into his estimates by which settlements between the parties were made, as work it was to pay for at the rate specified in the contract for paving grouted—that is, at the rate of $5 per cubic yard. Hughes having objected to this classification, it was agreed that the rubble paving should be classed and paid for as box culvert masonry at $6 per cubic yard. Of box culvert masonry

proper Hughes constructed 482 cubic yards, which when added to the
197 cubic yards of rubble paving agreed to be classed as box culvert
paving, made 679 cubic yards to be paid for as box culvert masonry at
$6 per cubic yard. Appellant's contention was that it paid Hughes for
said 679 cubic yards at $6 per cubic yard, including said 197 cubic yards
of rubble paving, and because of a mutual mistake, also paid Hughes
again for the 197 cubic yards of rubble paving at $5 per cubic yard.
It sought to recover of Hughes by an action brought against him the
sum of $985 as the amount so paid by mistake. Hughes died pending
the suit. An administration with the will annexed having been closed,
his widow, appellee Mrs. M. J. Hughes, as his sole devisee having re-
ceived all the property belonging to his estate, defended the suit.
Among other matters set up by her as a reason why appellant should
not be permitted to recover back the money it claimed to have paid to
Hughes by mistake, was the fact, as she alleged, that Hughes had sub-
contracted the work, and in ignorance of the mistake, if there was one,
had paid to the subcontractors on estimates of their work made by
appellant and including the error, the sum appellant claimed to have
paid by mistake; and that "such subcontractors," quoting from her
answer, "were released, and are now gone, and their whereabouts un-
known to said Hughes at the time said alleged error or double pay-
ment, if such was made, was discovered, and said subcontractors received
the benefit of said error or double payment, and not the said Hughes
or this defendant." The verdict was in favor of Mrs. Hughes, and a
judgment was rendered that appellant take nothing by its suit.

The first contention made by appellant, and the only one we think
it necessary to consider, in view of the disposition to be made of the
appeal, is that the trial court erred in instructing the jury as follows:
"If you believe from the evidence in this case that the defendant, J. P.
Hughes received from the plaintiff, by mistake, double pay for 197
cubic yards of masonry you will find for the plaintiff, H. & T. C. Ry.
Co., against the defendant Mrs. M. J. Hughes for the sum of $985,
unless you further find that the defendant J. P. Hughes paid said
double amount, if any, so received to subcontractors before defendant
had any knowledge of said double payment, and if you believe that the
said defendant paid the said amount so received as a double payment
to said subcontractors before he had any knowledge of said mistake
and double payment you will find for the defendant."

The limitation in the instruction on the right of appellant to recover
if it paid the money to Hughes by mistake, we think was not authorized
by principles controlling in such cases. The rule has been stated to
be that "subject to the exception that money paid under a mistake of
fact can not be recovered where the payer has derived a substantial
benefit from the payment, nor where the payee received it in good faith
in satisfaction of an equitable claim, nor where it was due in honor
and conscience, a payment made by mistake of fact, which the party
is not bound by law to make, under ignorance of the facts or in mis-
apprehension in regard thereto, may be recovered back." 30 Cyc., 1316;.

22 A. & E. Enc. of Law, 621. The reason is that the payee ought not to be permitted to retain that which in conscience does not belong to him as against the person to whom in conscience it does belong. If, in addition to those stated, there is a further limitation on the rule than that a recovery can not be had of an agent who in good faith has paid money received by him as such over to his principal, it must rest in the fact that, aside from the mistake, the payer has been guilty of conduct which has induced the payee, being himself without fault, to so act with reference to the money received by him as to cause him to suffer loss if the payer should be permitted to recover it back. City of Duluth v. McDonnell, 61 Minn., 288, 63 N. W., 727; Kingston Bank v. Eltinge, 40 N. Y., 391, 100 Am. Dec., 521; Phetteplace v. Bucklin, 18 R. I., 297, 27 Atl., 212; Moors v. Bird, 190 Mass., 400, 77 N. E., 645; Baltimore & S. Ry. Co. v. Faunce, 6 Gill (Md.), 68, 46 Am. Dec., 656; German S. Bank v. Columbia F. & Trust Co., 85 S. W., 763; Barth v. Jester, 3 App. C. C. (Willson), sec. 223; First Natl. Bank v. Behon, 91 Ky., 560, 16 S. W., 368; Bank of Commerce v. Union Bank, 3 N. Y., 237. For it seems to be settled in this State that the mere fact that the mistake was due to negligence on the part of the payer will not preclude him from recovering of the payee. "Such negligence," it was said, "does not give to the party receiving the payment the right to retain what was not his due, unless he has been misled or prejudiced by the mistake." City Bank of H. v. First Natl. Bank of H., 45 Texas, 218; Alston v. Richardson, 51 Texas, 6. Under the rules stated, we think it is clear, if appellant paid the money to Hughes by mistake, that the mere fact that the latter may have paid it to his subcontractors before he knew same had been paid to him by mistake was not a reason why appellant should be denied the right to recover it back, and that in instructing the jury that it was, the court erred. The error was not, we think, as appellee suggests it was, one of omission merely. As an unwarranted limitation on appellant's right to recover on the ground of mistake, we think the error was a positive and affirmative one. Therefore the judgment will be reversed and the cause will be remanded for a new trial.

*Reversed and remanded.*