## CLARK v. BRADLEY.   (No. 11097.)

(Court of Civil Appeals of Texas.   Fort Worth.   March 14, 1925.)

**1. Appeal and error ⬅799—Court of Civil Appeals authorized to consider affidavits in determining whether it had jurisdiction of suit begun in justice court.**

Court of Civil Appeals, in determining whether it had jurisdiction of suit commenced in justice court, could consider affidavits as to whether plaintiff in such court prayed for interest by way of damages; such affidavits, in view of Complete Tex. St. 1920 or Vernon's Sayles' Ann. Civ. St. 1914, art. 1593, merely supply deficiencies of record as to matter which Rev. St. art. 2326, does not require to be shown.

**2. Appeal and error ⬅65—Court of Civil Appeals held to have jurisdiction of suit begun in justice court.**

Court of Civil Appeals *held* to have jurisdiction of appeal in suit begun in justice court for $100 and interest, where interest was claimed by way of damages and not eo nomine.

**3. Assignments ⬅90—Assignee of claim has no more rights under assignment than assignor.**

Assignee of claim for overpayment in sale of property through mutual mistake acquired no more rights under assignment than assignor possessed.

**4. Payment ⬅85(1)—Payment made by mistake of fact may generally be recovered back.**

Payment made by mistake of fact, which party is not obliged to make, under ignorance of facts or in misapprehension thereto, may generally be recovered back.

**5. Payment ⬅85(2)—Payor may recover back money paid by mistake, though having means of knowledge of facts.**

That payor, when making payment, had means of knowing facts does not ordinarily preclude him from recovering back money paid by mistake, if he did not have actual knowledge.

**6. Payment ⬅85(8)—Generally payment made by mistake of fact not recoverable, if payee's position has changed.**

Generally payment, although made by mistake of fact, cannot be recovered, where payee has changed his position to his prejudice, and cannot be put in statu quo by payor.

**7. Payment ⬅85(8)—Doctrine of irrevocable change of position no defense to action for money paid under mistake.**

As between immediate parties to contract, doctrine of irrevocable change of position involving loss to defendant, where parties are equally innocent, is no defense to action to recover money paid under mistake.

**8. Payment ⬅85(8)—Assignee held not entitled to recover overpayment made by assignor through mistake of fact to an agent.**

Assignee of payor, overpaying holder of legal title in sale of property through mistake

of fact, *held* not entitled to recover overpayment, where payor knew when making payment that payee was in fact agent of real owner and had no interest except to collect his fee, and payee, if required to repay, would have no recovery against real owner, who was then insolvent.

Appeal from Tarrant County Court; H. O. Gossett, Judge.

Action by J. G. Clark against Durwood Bradley.   Judgment for defendant, and plaintiff appeals.   Affirmed.

Bryan, Stone, Wade & Agerton, Alfred M. Scott, and J. C. Hyer, all of Fort Worth, for appellant.

Sam J. Callaway and Burney Braly, both of Fort Worth, for appellee.

BUCK, J.   [1] J. G. Clark sued Durwood Bradley under an assignment of the cause of action from R. E. Squires for $100, paid by Squires to Bradley through a mutual mistake.   Suit was first filed in the justice court.   The entry on the docket in that court shows that it was a "suit for debt for $100."   The memorandum of oral pleadings of the parties in that court, found in the record, shows that plaintiff pleaded for interest on the amount sued for from the time it was alleged the money was paid to Bradley by mutual mistake.   There is an affidavit of appellant's attorney attached to appellant's reply to the appellee's motion to dismiss the appeal for want of jurisdiction, stating that in the justice court plaintiff there, appellant here, asked for interest on the recovery sought.   In the county court plaintiff below prayed for interest.

Article 2326, Rev. Civ. Statutes, provides:

"The pleadings in the justices' courts shall be oral, except where otherwise specially provided; but a brief statement thereof may be noted on the docket."

We think it is permissible to consider affidavits touching the question of our jurisdiction, and whether plaintiff did in fact in the justice's court pray for interest by way of damages, thus making the amount sought to be recovered in excess of $100 and within the jurisdiction of this court on appeal.   A. J. Birdsong & Son v. Allen (Tex. Civ. App.) 165 S. W. 46; F. & C. Sav. Bank v. Smith (Tex. Civ. App.) 188 S. W. 1026; H. & T. C. Ry. Co. v. Architectural Cement Stone Co., 112 Tex. 19, 245 S. W. 644.   We do not think the affidavit of appellant's attorney herein attempts to contradict or vary the record or is an attack upon it, which is prohibited (Sumrall v. Russell [Tex. Civ. App.] 262 S. W. 507, and cases there cited), but that the affidavit here shown merely seeks to supply the deficiencies of the record as to a matter which the statute does not require to

be shown. Article 1593, Rev. Civil Statutes, and cases cited thereunder.

[2] As to interest claimed by way of damages, and not eo nomine, see Walker v. Alexander (Tex. Civ. App.) 212 S. W. 213 (Tex. Cr. R.) 227 S. W. 696; Fort Worth State Bank v. Little (Tex. Civ. App.) 168 S. W. 55; Midland Casualty Co. v. Arnott (Tex. Civ. App.) 199 S. W. 890. We think the motion to dismiss the appeal for want of jurisdiction should be overruled, and it is accordingly so ordered. The defendant won in the justice's court, and in the county court the trial court gave a peremptory instruction for the defendant. Both sides asked for a peremptory instruction.

[3] The evidence shows that Durwood Bradley held the legal title to a piece of residence property in the city of Fort Worth, but that the beneficial interest therein was vested in one Frank Hofeus. Bradley had only an interest in the purchase money paid by Squires for the property to the extent of $100, claimed as an attorney's fee. The evidence further shows that Squires knew this before he gave his check, which included an overpayment of $100. Of course Clark, as assignee of the cause of action, acquired no more rights under the assignment than Squires possessed. The evidence shows that Bradley, Hofeus, Squires, and Clark were in the office of Clark, a realtor whose firm had been instrumental in making the sale, and that the four were trying to figure out how much cash was due the vendor. Squires was to assume some first lien notes and some second lien notes and some repair bills and other items. According to the first agreement, a third vendor's lien note of $500 was to be given by Squires, but he later agreed to pay $400 of this amount in cash, if the vendor would deduct from the purchase price $100 of the total consideration. Clark was doing the figuring, and it is this $100 that the parties failed to give Squires credit for. Bradley left the conference before it was ended; telling the others that Hofeus was the real owner of the property, and that any deal that would be satisfactory to Hofeus would be satisfactory to him. When the parties had agreed as to the various items to be deducted from the total consideration to be paid, the two sets of vendor's lien notes and the other expenses assumed by Squires, the latter asked how much he must give his check for, and Mr. Clark said, "$1,264.15," and he gave his check for that amount, payable to Bradley. Squires had already paid $250 to Clark to bind the trade. When Squires got home he and his wife went over the figures, and he then discovered that he had not been given credit for the $100 discount allowed on the $500 third vendor's lien note, as originally agreed to be given, but for which he had agreed to pay $400 in cash. He then called up Mr. Clark and reported the matter, and

later came to Mr. Clark's office and they went to Mr. Bradley's office. Mr. Bradley told them that he had cashed the check given him immediately, and had taken out his $100, and given the balance to Mr. Hofeus, but that it appeared a mistake had been made, and he would see Hofeus, and try to get him to return it. Later he did see Hofeus, but he would not or could not repay the $100, but offered to give his note therefor. But Mr. Clark, for reasons satisfactory to him, refused to accept his note, repaid Squires the $100, had the cause of action assigned to him, and brought this suit.

Appellant urges that Bradley was either owner of the title to the property involved or was trustee for Hofeus, holding the legal title in himself, and in either event was liable for the money paid to him under a mutual mistake, and that therefore the trial court erred in giving a peremptory instruction for the defendant below. Appellee, on the other hand, contends that, since Squires knew at the time he paid the extra $100, under a mutual mistake, Bradley was merely holding the title to the property for Hofeus, and had no interest in the proceeds from the sale except the $100 due him as an attorney's fee, and, since the evidence shows that Bradley, prior to the time the mistake was made, had paid over to the beneficial owner the proceeds from the check, save his $100, that he had lost the opportunity to recoup himself, and should not be held liable.

[4] 30 Cyc. p. 1316, says:

"Subject to the exception that money paid under a mistake of fact cannot be recovered where the payor has derived a substantial benefit from the payment, nor where the payee received it in good faith in satisfaction of an equitable claim, nor where it was due in honor and conscience, a payment made by mistake of fact, which the party is not by law obliged to make, under ignorance of the facts or in misapprehension in regard thereto, may be recovered back."

[5] Again, on page 1320, it is said:

"The fact that a person, when making a payment had the means of knowing the facts, does not of itself ordinarily preclude him from recovering back the money, if he did not have actual knowledge."

[6] And on page 1321, same volume, it is said:

"The general rule is that a payment, although made by a mistake of fact, cannot be recovered where the payee has changed his position to his prejudice because thereof, and cannot be put in statu quo by the payor. For instance, if money is paid by mistake to an agent, stakeholder, or other person acting merely in a representative capacity, it cannot be recovered back if he has settled his accounts or paid it over before notice and the loss would fall on him individually. But in other cases where money is received under a mistake of fact, it is no defense that it has

been paid over to another unless the person who received the money was a mere agent or representative of that other person."

See authorities cited by the author under both state of facts, and Barth v. Jester Bros., 3 Wilson App. Civ. Cases, §§ 222, 223; Alston v. Richardson, 51 Tex. 6; City Bank v. First National Bank, 45 Tex. 203; Michalke v. Brown (Tex. Civ. App.) 185 S. W. 429, including cases there cited; National Bank v. McLane, 96 Tex. 48, 70 S. W. 201.

In H. & T. C. Ry. Co. v. Hughes, 63 Tex. Civ. App. 514, 133 S. W. 731, the principle of law above quoted from Cyc. p. 1316, is applied in the disposition of the case, and the opinion further holds that the fact that the general contractor paid out to subcontractors the amount paid to him, under a mistake of fact, did not preclude a recovery from the contractor's legal representative. We think the facts in the cited case distinguish it from the instant case. There Hughes was the general contractor, and the money paid to him under a mistake of facts was so paid by the railway company for work and labor which he, under the contract, was bound to do, though he in fact had let out some of the work to others. In so far as the relation between Hughes and his employer was concerned, he was not an agent receiving money for his principals, the subcontractors. See Kingston v. Eltinge, 40 N. Y. 891, 100 Am. Dec. 516, and cases there cited, to the effect that the fact that the payee has subsequent to the payment altered his condition, and that he would lose if required to pay back money paid to him under a mistake of fact, relieves him from his duty to repay such amount.

[7] We think the evidence in this case shows unmistakably that Bradley was only the holder of the title to the property for the benefit of Hofeus, and that Squires knew this fact at the time the money was paid, and knew that Hofeus and not Bradley was the real owner of the property. As between the immediate parties to an obligation or contract the doctrine as to an irrevocable change of position involving loss to the defendant, where the parties are equally innocent, constitutes no defense to an action brought to recover money paid under mistake, for it is an ordinary result of payment of money by mistake that the payee has incurred liabilities or paid money which he would not have done, except for the receipt of the money, and, if the rule were applied in all cases, there could seldom be a recovery. 21 R. C. L. p. 170, § 201, and cases there cited.

[8] But we think that in the instant case Bradley was in effect an agent of Hofeus for consummating the deal, and that Squires knew the relation between Bradley and Hofe-

us as to that matter. While it may be said that Bradley was a trustee, and as such holding the title for the beneficial owner, yet, if such be the case, the trust was a simple or dry trust, and the record discloses no interest on the part of Bradley in property, or the proceeds thereof, except the collection of his fee of $100. It is evident that, had Bradley repaid the amount, or had recovery been had against him in the present suit, he would have been unable to recover against Hofeus the amount, inasmuch as it is conceded that Hofeus was insolvent and execution proof. We do not think that such cases as Connally v. Lyons & Co., 82 Tex. 664, 18 S. W. 799, 27 Am. St. Rep. 935, are pertinent. In the cited case Connally was the trustee for the purpose of conducting a mercantile business for the benefit of himself and his father and brothers. He was held liable personally for merchandise sold to him as such merchant. It was held that the provisions of the declaration of trust did not create a partnership, as the beneficiaries had no right of control reserved in the instrument and no right to withdraw their several interests, until the time specified for the closing up of the business. Hence the trustee was held personally liable.

We appreciate fully the good faith of the appellant and his assignor in the effort to recover the amount paid under mutual mistake, but believe, under the authorities cited, as well as many others that might be cited, that under the circumstances he cannot recover against the appellee. Therefore the judgment of the trial court is affirmed.